UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARSHA BETH BREWER,

      Plaintiff,

  v.                                                                            Case No. 04-C-0694

WISCONSIN BOARD OF BAR
EXAMINERS, et al.,

      Defendants.

**ORDER**

Plaintiff Marsha Beth Brewer seeks admission to the Wisconsin bar. Having failed to obtain it, she has sued the State of Wisconsin, its Board of Bar Examiners and the members thereof, two of the Board's staff, and the justices of the Wisconsin Supreme Court. Brewer asserts claims under the Americans with Disabilities Act (ADA), the Vocational Rehabilitation Act of 1973, the Fourth Amendment and the due process and equal protection clauses of the Fourteenth Amendment. She also asserts claims under 42 U.S.C. §§ 1983 and 1985.

I previously dismissed a similar complaint filed by plaintiff for failure to comply with the pleading requirements of the Federal Rules of Civil Procedure. The dismissal was without prejudice, however, and Brewer was given leave to replead. She has now filed an amended complaint, and the defendants have again filed a motion to dismiss. For the following reasons, the motion will be granted in part and denied in part.

**FACTS**

On January 16, 2003, Brewer applied to the Wisconsin Board of Bar Examiners for admission to the Wisconsin Bar. (Am. Compl. ¶ 19.) She was to graduate from the University of Wisconsin Law School in May of 2003. (*Id*.) The Board, throughout 2003, requested additional information from Brewer concerning, amongst other things, an eviction, discipline under a previous teacher's license, and eligibility for a teacher's license. (Am. Compl. ¶¶ 19, 34.) Brewer also answered interrogatories concerning her past and current mental health. (*Id*.) It appears that Brewer had been diagnosed with depression and personality disorders and receives Social Security Disability benefits. (*Id*.) Brewer had taken anti-depression medication prior to 1987 and had psychological counseling through 1991. (*Id*.) Brewer notes that she does not currently take medication and does not have a mental health provider. (*Id*.)

During the summer of 2003, the Board requested Brewer's medical records from providers who filed mental health reports for Brewer's application for Social Security Disability in 1986. (Am. Compl. ¶ 20.) Brewer signed a medical records release. (Am. Compl. ¶ 19.) None of those providers, however, still possessed her records. (*Id*.) In December of 2003, the Board requested that Brewer undergo an independent psychological evaluation. (Am. Compl. ¶ 21.) The Board specified two providers from whom Brewer could choose and required that she pay for the evaluation. (*Id*.) Brewer learned that such an evaluation would cost approximately $2,000.00 and requested that the Board pay for the evaluation due to financial hardship. (Am. Compl. ¶ 23.) Alternatively, Brewer requested that the Board waive the psychological evaluation or permit her to provide proof of her mental health in a different manner, such as by offering correspondence from past employers or law school staff. (*Id*.) The Board declined to provide these accommodations.

During this period, Brewer requested an extension on her bar application. The Board granted an extension until July of 2004. (*Id*.) Ultimately, the Board never made a decision on whether or not to admit Brewer. (Am. Compl. ¶ 25.) She was informed that her application was closed and that she could reapply for admission, but could not do so through Wisconsin's diploma privilege. (*Id*.) Brewer filed this lawsuit in response.

**ANALYSIS**

In reviewing the plaintiff's complaint in regard to any motion to dismiss, all well-pleaded facts are assumed to be true, and all such facts, as well as the reasonable inferences therefrom, are viewed in the light most favorable to the plaintiff. *Gutierrez v. Peters*, 111 F.3d 1364, 1368-69 (7th Cir. 1997). Dismissal of an action under Rule 12(b)(6) is warranted if the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir. 1999); *see Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The essence of a Rule 12(b)(6) motion is not that the plaintiff has pleaded insufficient facts, it is that even assuming all of his facts are accurate, he has no legal claim. *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999). Federal notice pleading requires only that a plaintiff set out a "short and plain" statement of the claim providing a defendant with fair notice of her claim; fair notice does not require every element of a legal theory to be specifically set forth. *Scott*, 195 F.3d at 951. Conclusions or vague language are acceptable so long as a defendant can understand the claim. *See Muick v. Glenayre Elecs.*, 280 F.3d 741, 744 (7th Cir. 2002).

Defendants first argue that Brewer's complaint should again be dismissed for failure to comply with pleading rules requiring "a short plain statement of the claim" and separate paragraphs

3

"limited as far as practicable to a statement of a single set of circumstances." Fed. R. Civ. P. 8(a)(2) and 10(b). Defendants note that Brewer's amended complaint differs little from her original complaint and suffers from the same defects, including lengthy paragraphs that allege multiple, unrelated sets of circumstances. The only significant change from the earlier complaint is that the paragraphs are now numbered. Defendants contend that in light of Brewer's failure to comply with this court's earlier order, the amended complaint should be likewise dismissed, this time with prejudice.

Although defendants' argument is not wholly without merit, I conclude that the organization and structure of the amended complaint are sufficient to provide notice of the claims asserted and to allow a responsive pleading. Brewer is proceeding pro se, and though a graduate of law school, is not licensed as an attorney. Given her pro se status and the liberal pleading rules that apply in federal court, I will decline defendants' request that the complaint again be dismissed on procedural grounds and turn to the substantive merits of Brewer's claims.

Defendants next argue that Brewer's entire amended complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) because this court lacks subject matter jurisdiction to hear Brewer's claims under the Rooker-Feldman doctrine. (Defs.' Rev. Br. at 11.) The Rooker-Feldman doctrine originates from two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The doctrine "provides that lower federal courts do not have subject matter jurisdiction to review state court civil decisions." *Edwards v. Illinois Board of Admissions to the Bar*, 261 F. 3d 723, 728 (7th Cir. 2001). The rationale behind the doctrine is that federal district courts can only exercise original jurisdiction. *Feldman*, 460 U.S. at 476. To determine whether the doctrine applies, this court must first ask whether the injury being

alleged by the plaintiff results from a state-court judgment or is separate from any such judgment. *Edwards*, 261 F.3d at 729. If the injury resulted from a state court judgment, then this court lacks subject matter jurisdiction. *Id*. If, on the other hand, the injury is separate from a state-court judgment, then the court must ask whether the injury is inextricably intertwined with a state court judgment. *Id*. A claim is inextricably intertwined with a state court judgment if a federal district court must essentially review the decision of a state court to consider the claim. *Feldman*, 460 U.S. at 482. If the injury is inextricably intertwined with a state court judgment, this court cannot exercise subject matter jurisdiction. *Edwards*, 261 F.3d at 729.

For the Rooker-Feldman doctrine to have any application there must be a final state court judgment. *Long v. Shorebank Development Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). A judicial decision "investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist." *Feldman*, 460 U.S. at 477 (quoting *Prentis v. Atlantic Coast Line*, 211 U.S. 210, 226 (1908)). The United States Supreme Court, in *Exxon Mobil Corporation v. Saudi Basic Industries Corporation*, ___ U.S. ___, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005), recently emphasized the Rooker-Feldman doctrine's use, limiting it to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." 125 S. Ct. at 1521-22.

Although the Rooker-Feldman doctrine has been invoked to dismiss many cases concerning admission to the bar or attorney discipline, it does not apply here because, simply put, there was no state-court judgment. The defendants themselves emphasize in their brief that "[a]t this point, there has been no adverse decision on [Brewer's] application for admission to the bar" and that "the board

5

is still at the stage where it is attempting to determine her character and fitness to practice law . . . ." (Defs.' Am. Resp. at 23.) Moreover, in a letter to Brewer, Defendant Rankin advised her that the Board's decision to close her file "is not a denial of admission, so such a decision is not appealable to the Wisconsin Supreme Court." (Docket #17.) Since no state court judgment has been rendered or can be rendered until the matters at issue in this case are resolved, the Rooker-Feldman doctrine does not prevent this court from exercising subject matter jurisdiction over Brewer's claims. Accordingly, the court turns to an examination of those claims, which defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(6).

Brewer first claims that the Board deprived her of a property right without due process of law. Brewer argues that the Board, by dragging out its investigation of her character and fitness, extended the investigation beyond the one-year limit under which her diploma privilege exists. Wis. SCR § 40.09(1). Brewer is not arguing that she has a property right to be an attorney. Rather, Brewer claims that she has a property interest in the diploma privilege because it establishes her legal competence for bar admission, and that the Board's delay in its character and fitness evaluation took that established competence away from her.

To determine whether a plaintiff has received the process due her under the due process clause of the Fourteenth Amendment, the court must first determine whether the plaintiff in fact possesses a protected property interest as a matter of law. *Fittshur v. Village of Menominee Falls*, 31 F.3d 1401, 1405 (7th Cir. 1994). If she does, then the court must consider what process the state must afford the plaintiff before taking away that interest. *Id*. A property interest derives from state law. *Fittshur*, 31 F.3d at 1405. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. [Sh]e must have more than a unilateral expectation of

6

it. [Sh]e must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). That property interest must be such that "viewed functionally, [it] is what is securely and durably [hers] under . . . law, as distinct from what [she] hold[s] subject to so many conditions as to make [her] interest meager, transitory, or uncertain." *Scott v. Village of Kewaskum*, 786 F.2d 338, 340 (7th Cir. 1986) (quoting *Reed v. Village of Shorewood*, 704 F.2d 943, 948 (7th Cir.1983)).

The diploma privilege entitles an applicant who graduates from a law school in Wisconsin with sufficient credits to satisfy the legal competence requirement for admission to the bar without taking a bar examination. Wis. SCR § 40.03. The diploma privilege itself, however, does not grant an individual the right to become an attorney. SCR § 40.02 also requires that an applicant, among other conditions, prove his or her character and fitness to practice law. The burden of meeting conditions for admission to the bar rests on the applicant. Wis. SCR § 40.07; *In Re Bar Admission of Rippl*, 661 N.W.2d 27, 33 (Wis. 2003).

At the time she applied for admission to the bar, Brewer had only a unilateral expectation that she would be able to prove her competence to practice by the diploma privilege. *See Matter of Martin*, 510 N.W.2d 687, 692-93 (Wis. 1994). Her use of the privilege to prove her competence was subject to conditions, including the condition that she satisfy Wisconsin's character and fitness requirements for admission within one year. The diploma privilege was meaningless to her unless all those conditions were satisfied. Because Brewer's interest in the diploma privilege was conditional, it was not a property interest. Accordingly, Brewer's due process claim will be dismissed.

Brewer next claims that defendants violated her Fourteenth Amendment right to equal protection by subjecting her bar application to heightened investigation due to her status as a person

7

with a perceived psychological impairment. (Am. Compl. ¶ 27.) A plaintiff has stated an equal protection claim when she "allege[s] that a state actor purposefully discriminated against h[er] because of h[er] identification with a particular . . . group." *Sherwin Manor Nursing Center, Inc. v. McAuliffe*, 37 F.3d 1216, 1220 (7th Cir. 1994). While discrimination based on criteria such as race, sex, or religion trigger heightened scrutiny under the Fourteenth Amendment, all state-sponsored discrimination between persons must be rationally related to a legitimate state interest to pass muster under the equal protection clause. *Wroblewski v. City of Washburn*, 965 F.2d 452 (7th Cir. 1992).

The court clearly must dismiss Brewer's equal protection claims against the State, the Board, and the Court, because none of those defendants is a "person" liable under 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The court will also dismiss Brewer's equal protection claim as to the defendants in their individual capacities since the heightened scrutiny of which Brewer complains obviously bears a rational relationship to the Board's interest in insuring that only competent persons are admitted to the practice of law in Wisconsin. Mental illness, unlike other disabilities, often affects an individual's rational faculties which are crucial to the practice of law. It would therefore seem entirely reasonable for the Board to seek further information concerning a candidate for admission who has a history of having such a disability. Because the Board's request for further information concerning Brewer is rationally related to its essential function, Brewer's equal protection claim fails.

Brewer next argues that the Board's request for her past medical records and the proposed psychological examination infringes upon her Fourth Amendment right to be free from unreasonable searches and seizures. Brewer cites no authority for this proposition, which has been rejected by

8

the Seventh Circuit, *see Greenawalt v. Indiana Department of Corrections*, 397 F.3d 587, 590-91 (7th Cir. 2005), and will be rejected here as well.

Brewer also asserts a claim under § 504 of the Vocational Rehabilitation Act of 1973, which prohibits disability discrimination "under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.[1] Defendants argue that plaintiff has not alleged that they received federal financial assistance, a requisite for a claim under the Rehabilitation Act. Brewer has alleged that "Wisconsin receives some federal funding, which places Wisconsin's licensing activities within 'Sect. 504' and federal regulations against disability discrimination." (Am. Compl. ¶ 31.) While the court is certain that the State of Wisconsin receives "some federal funding," it is unclear whether the Board or the Court receives such funding. *Cf.* 29 U.S.C. § 794(b)(1) (limiting definition of "program or activity" to "(A) a department, agency, special purpose district, or other instrumentality of a State or of a local government; or (B) the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government . . . any part of which is extended Federal financial assistance."). Nevertheless, while proof of receipt of federal funds is required for Brewer to ultimately prevail on her Rehabilitation Act claim, I am not convinced that plaintiff's failure specifically to allege receipt of federal funds for the specific program at issue in her complaint is fatal. Defendants cite *National Collegiate Athletic Ass'n v. Smith*, 525 U.S. 459, 464 (1999), in support of their contention that the failure to

---

[1] " No otherwise qualified individual with a disability in the United States, as defined in section 7(20) [29 U.S.C. § 705(20)], shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."

9

allege receipt of federal funds is grounds for dismissal. But *Smith* involved a suit against a private organization that all parties agreed did not itself receive federal funds. The issue there was whether the fact that its members received federal funding was sufficient to make Title IX applicable. *Smith* held that it was not. Here, we are dealing with a State and its agencies, and the record is silent as to whether federal funding is involved. In *Bartlett v. New York State Board of Bar Examiners*, 156 F.3d 321, 329-30 (2d Cir. 1998), the Second Circuit held that the New York Board of Bar Examiners was subject to the Rehabilitation Act of 1973. While *Bartlett* does not control here, it makes Brewer's Rehabilitation Act claim at least plausible. Defendants are free to assert the absence of federal funding as an affirmative defense to the claim and seek summary judgment on that basis. At this stage of the proceeding, however, I do not find Brewer's failure to allege receipt of federal funds fatal to her Rehabilitation Act claim.

The same is not true, however, with respect to the claims against the defendants in their individual capacities. The Rehabilitation Act provides a remedy against State or local agencies or entities; it provides no remedy against the individuals that may work for such agencies. *See* 29 U.S.C. § 794a. *Hiler v. Brown*, 177 F.3d 542, 546 (6th Cir. 1999). Brewer's Rehabilitation Act claims against the defendants in their individual capacities will therefore be dismissed.

Brewer next asserts a claim under Title II of the ADA. 42 U.S.C. § 12132.[2] Defendants argue that the State of Wisconsin and its agencies have sovereign immunity from claims under the ADA. Citing *Stevens v. Ill. Dept. of Trans.*, 210 F.3d 732 (7th Cir. 2000), *cert. denied*, 531 U.S. 1190 (2001), defendants contend that States are entitled to Eleventh Amendment immunity under

---

[2]"Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

10

the ADA in its entirety. For this reason, and because Eleventh Amendment immunity extends to agencies of the State, as well as individual state employees or officers acting in their official capacities, defendants argue that Brewer's ADA claim should be dismissed.

It is clear that states are immune from liability under Title I of the ADA, which prohibits discrimination against individuals with disabilities in connection with conditions and privileges of employment. The Supreme Court held as much in *Board of Trustees of the Univ. of Alabama v. Garrett*, 531 U.S. 356 (2001). *Garrett* held that Congress exceeded its powers under § 5 of the Fourteenth Amendment in seeking to authorize suits against the states for discrimination against individuals with disabilities in the conditions and privileges of employment. The Court held that the record Congress developed failed to support the existence of a pattern of discrimination against the disabled in employment by the states that would justify such a remedy. *Id.* at 374. But Brewer's claim arises under Title II of the ADA, which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In *Tennessee v. Lane*, 541 U.S. 509, 533-34 (2004), the Court held that Title II of the ADA constitutes a valid exercise of Congress's § 5 power as applied to cases implicating a plaintiff's fundamental right of access to the courts. The question therefore arises whether Brewer's ADA claim is controlled by *Garrett* or by *Lane*.

At least two district courts have addressed this issue. In *Roe v. Johnson*, 334 F. Supp.2d 415 (S.D. N.Y. 2004), the court held that because of the absence of legislative findings establishing a pattern of unconstitutional discrimination against persons with disabilities seeking admission to state bars, application of Title II of the ADA to such proceedings is not a valid exercise of

11

congressional power under § 5 and does not abrogate a State's Eleventh Amendment immunity.

334 F. Supp.2d at 422. In support of its holding, the court noted:

> The legislative record for the ADA does not include any findings documenting a pattern of state discrimination in the admission of attorneys to the bar, or more generally in the granting of licenses to professionals. *See* 42 U.S.C. § 12101; S.Rep. No. 101-116 (1989); H.R.Rep. No. 101-485 pts. 1, 2, 3 & 4 (1990), reprinted in 1990 U.S.C.C.A.N. 267; H.R. Conf. Rep. 101-558 (1990); H.R. Conf. Rep. No. 101-596 (1990), reprinted in 1990 U.S.C.C.A.N. 565. Professional licensing is mentioned in the congressional record only in connection with the portion of Title III addressing the accessibility of test sites and the provision of accommodations with respect to testing conditions. *See, e.g.*, H.R. Conf. Rep No. 101-485 pt. 3 (1990), 1990 U.S.C.C.A.N. at 491. The specific application of Title II to a state's determination of an applicant's qualification for the bar is far removed from the type of discrimination in the administration of public programs and services that *Lane* found to be supported by the congressional record. *Lane*, --- U.S. at ----, 124 S.Ct. at 1990. The examples of discrimination discussed in the legislative history–for instance, the inadequate provision of public transportation and access to public facilities–do not support the existence of a pattern of discrimination in licensing that requires preventative or remedial legislation. *See, e.g.*, H.R.Rep. No. 101-485 pt. 2, 1990 U.S.C.C.A.N. at 366-82.

334 F. Supp.2d at 422-23.

Likewise, in *Simmang v. Texas Bd. of Law Examiners*, 346 F. Supp.2d 874, 870 (W.D. Tex. 2004), the court held that *Lane* was inapplicable to ADA Title II claims that did not implicate a fundamental right, such as the right of access to the courts. According to the *Simmang* court, "the Supreme Court based its conclusion in *Lane* on the state's deprivation of a fundamental right and not on 'irrational' discrimination against the disabled. The holding in *Lane* is thus inapplicable here." *Id.* at 883.

I agree with the courts' analysis of this issue in *Roe* and *Simmang*. Brewer's claim here, though arising under Title II, is far closer to the employment claim before the Court in *Garrett* than the courthouse access claim in *Lane*. And as noted above, admission to the bar is not a fundamental

12

right. I therefore conclude, as did the courts in *Roe* and *Simmang*, that "Title II, as applied to cases challenging a state's decisions concerning an applicant's admission to the bar, is an invalid exercise of Congress's power under Section 5." *Roe*, 334 F. Supp.2d at 423. It therefore follows that the defendants' Eleventh Amendment immunity is not abrogated in this context and Brewers ADA claims against the state, state entities and state actors in their official capacities must be dismissed. And because the ADA does not impose individual liability, *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1279-81 (7th Cir.1995), the individual capacity claims are dismissed as well.

Finally, Brewer's attempt to separately assert claims under 42 U.S.C. §§ 1983 and 1985 also fails. As noted above, neither the state, nor any state entity is a person for purposes of § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. at 71. Thus, any § 1983 claims against the state, the board and any of the named defendants in their official capacity must be dismissed. The remaining individual capacity claims fail because § 1983 does not confer substantive rights upon which suit may be brought. "For a § 1983 claim to exist, there must be a deprivation of either a constitutional right or a federal statutory right, and the action must be taken under color of state law." *Discovery House, Inc. v. Consolidated City of Indianapolis,* 319 F.3d 277, 281 (7th Cir. 2003). I have already held that Brewer's complaint fails to state a claim under the Due Process or Equal Protection Clauses of the Fourteenth Amendment. While it is true that a plaintiff may use § 1983 to enforce not only rights contained in the Constitution, but also rights that are defined by federal statutes, it is not available to enforce rights under either the ADA or the Rehabilitation Act. *See Alsbrook v. City of Maumelle*, 184 F.3d 999, 1011 (8th Cir. 1999) (" 'the comprehensive enforcement mechanisms provided under section 504 [of the Rehabilitation Act] and the ADA suggest Congress did not intend violations of those statutes to be also cognizable under § 1983' ") (*quoting Davis v.*

13

*Francis Howell School District*, 104 F.3d 204, 206 (8th Cir.1997)). And because Brewer has failed to allege any violation of a federally protected right for purposes of § 1983, if follows that there is no violation to support a claim under § 1985. *Bublitz v. Cottey*, 327 F.3d 485, 488 (7th Cir. 2003).

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is **GRANTED** with respect to all claims except plaintiff's claim under the Rehabilitation Act of 1974. That claim survives but only against the State of Wisconsin, the Wisconsin Board of Bar Examiners and the named defendants in their official capacities. The Clerk shall set this matter for a Rule 16 scheduling conference forthwith. *See* Fed. R. Civ. P. 16.

    **SO ORDERED.**

    Dated this __24th__ day of October, 2005.

                                                 s/ William C. Griesbach
                                                 William C. Griesbach
                                                 United States District Judge