# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

MARSHA BETH BREWER,

        Plaintiff,

      v.                         Case No. 04-C-0694

WISCONSIN BOARD OF BAR EXAMINERS, *et al.*,

        Defendants.

---

## DECISION AND ORDER

---

Plaintiff Marsha Beth Brewer filed suit against the State of Wisconsin, its Board of Bar Examiners and the members thereof, two of the Board's staff, and the justices of the Wisconsin Supreme Court after the Board ordered her to submit to a psychological examination as a precondition to taking action on her application for admission to the bar. Brewer originally asserted claims under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.*, the Vocational Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. In its Order of October 24, 2005, the court dismissed plaintiff's constitutional claims as well as her claims under the ADA and her Rehabilitation Act claims against the defendants in their individual capacities.[1] Defendants have

---

[1] Plaintiff's naming of the Board and (in her original complaint) the Court as defendants, and the court's references in its opinion to "the Court" and "the Board," should not be taken to mean that these agencies are suable entities in their own right, as distinct from the State. *Cf. Meek v. Springfield Police Dept.*, 990 F. Supp. 598, 601-602 (C.D. Ill. 1998) (holding that Springfield Police Department is "merely an organizational division of the City of Springfield and, therefore, does not enjoy an independent legal existence"). Likewise, a claim against state officials in their official capacity is really a claim against the State. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

now moved for summary judgment on the remaining claims on the grounds that the defendants do not receive federal funding–a prerequisite for applicability of the Rehabilitation Act. Plaintiff has filed a cross-motion for summary judgment on federal funding, and has moved for reconsideration of the dismissal of her due process, equal protection, and ADA claims. For the following reasons, defendants' motion will be granted. In addition, plaintiff's motion for reconsideration will be granted with respect to her claims for injunctive relief under the ADA, but otherwise denied.

## BACKGROUND

On January 16, 2003, Brewer applied to the Wisconsin Board of Bar Examiners for admission to the Wisconsin Bar. (Am. Compl. ¶ 19.) She was to graduate from the University of Wisconsin Law School in May of 2003. (*Id*.) The Board, throughout 2003, requested additional information from Brewer concerning, amongst other things, an eviction, discipline under a previous teacher's license, and eligibility for a teacher's license. (Am. Compl. ¶¶ 19, 34.) Brewer also answered interrogatories concerning her past and current mental health. (*Id*.) It appears that Brewer had been diagnosed with depression and personality disorders and currently receives Social Security Disability benefits. (*Id*.) Brewer took anti-depression medication prior to 1987 and underwent psychological counseling through 1991. (*Id*.) Brewer notes that she does not currently take medication and does not have a mental health provider. (*Id*.)

During the summer of 2003, the Board requested Brewer's medical records from providers who filed mental health reports for Brewer's application for Social Security Disability in 1986. (Am. Compl. ¶ 20.) Brewer signed a medical records release. (Am. Compl. ¶ 19.) None of those providers, however, still possessed her records. (*Id*.) In December of 2003, the Board requested

2

that Brewer undergo an independent psychological evaluation. (Am. Compl. ¶ 21.) The Board specified two providers from whom Brewer could choose and required that she pay for the evaluation. (*Id*.) Brewer learned that such an evaluation would cost approximately $2,000.00 and requested that the Board pay for the evaluation due to financial hardship. (Am. Compl. ¶ 23.) Alternatively, Brewer requested that the Board waive the psychological evaluation or permit her to provide proof of her mental health in a different manner, such as by offering correspondence from past employers or law school staff. (*Id*.) The Board declined to provide these accommodations.

During this period, Brewer requested an extension on her bar application. The Board granted an extension until July of 2004. (*Id*.) Ultimately, the Board never made a decision on whether or not to admit Brewer. (Am. Compl. ¶ 25.) She was informed that her application was closed and that she could reapply for admission, but could not do so through Wisconsin's diploma privilege. (*Id*.) Brewer filed this lawsuit in response.

## ANALYSIS

### I. Motions for summary judgment

Under the Federal Rules of Civil Procedure, summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c)

3

mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

As *Celotex* makes clear, the burden that each party carries with respect to a motion for summary judgment under the federal rules varies significantly depending upon which party bears the burden of proof at trial on the issue upon which summary judgment is sought. Where the party seeking summary judgment does not bear the burden of proof at trial on any element of the claim, it is enough that it inform the court of "the basis of its motion and identif[y] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Id.* at 323. There is no requirement that a moving party who does not bear the burden of proof establish that the element does not exist. In other words, a moving party who does not have the burden of proof at trial, (usually the defendant), is not required to prove a negative in order to make a prima facie showing for summary judgment. *Id.*

Once such a showing is made, however, the nonmoving party who does have the burden of proof at trial, (usually the plaintiff), must respond. In the face of a properly supported motion for summary judgment by the defendant, the plaintiff must designate specific facts to support or defend each element of the cause of action, showing that there is a genuine issue for trial. *Id.* at 322-24. Moreover, the party that bears the burden of proof at trial must show that it has admissible evidence to support its claim:

> When as in the present case a defendant moves for summary judgment on the ground that the plaintiff lacks evidence of an essential element of his claim, the plaintiff is required by Fed.R.Civ.P. 56, if he wants to ward off the grant of the motion, to present evidence of evidentiary quality--either admissible documents or attested testimony, such as that found in depositions or in affidavits--demonstrating the existence of a genuine issue of material fact. The evidence need not be in admissible form; affidavits are ordinarily not admissible evidence at a trial. But it must be admissible in content, in the sense that a change in form but not in content, for example a substitution of oral testimony for a summary of that testimony in an affidavit, would make the evidence admissible at trial.

*Winskunas v. Birnbaum*, 23 F.3d 1264, 1267-68 (7th Cir. 1994) (internal citations omitted). It is for this reason that summary judgment is referred to in federal courts as the "put up or shut up moment in a lawsuit." *Johnson v. Cambridge Industries, Inc.,* 325 F.3d 892, 901 (7th Cir. 2003) (internal quotes omitted).

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). As defined in the Rehabilitation Act,

> the term "program or activity" means all of the operations of–
>
> (1) (A) a department, agency, special purpose district, or other instrumentality of a State or of a local government; or
>
> (B) the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government;
>
> . . .
>
> any part of which is extended Federal financial assistance.

29 U.S.C. § 794(b); *see also* 45 C.F.R. § 84.3(k). As the Eight Circuit has explained,

5

The Rehabilitation Act requires States that accept federal funds to waive their Eleventh Amendment immunity to suits brought in federal court for violations of Section 504. Since Section 504 covers only the individual agency or department that accepts or distributes federal funds, this waiver requirement is limited in the same way. By accepting funds offered to an agency, the State waives its immunity only with regard to the individual agency that receives them. A State and its instrumentalities can avoid Section 504's waiver requirement on a piecemeal basis, by simply accepting federal funds for some departments and declining them for others.

*Jim C. v. United States*, 235 F.3d 1079, 1081 (8th Cir. 2000) (internal citations omitted).

The parties' dispute over the applicability of the Rehabilitation Act centers on whether the Court or the Board operates a program or activity that receives federal financial assistance. The parties agree that the Office of State Courts, an entity under the supervision of the Court, receives federal funds. Defendants argue, however, that the Office is a separate "department, agency . . . or . . . instrumentality" from the Court and the Board. Defendants contend that neither the Court nor the Board receives federal financial assistance. Plaintiff argues that Wisconsin maintains a "unified state court system" (Br. at 2), of which the Court is the "highest administrative authority" (*Id.*) and the Board and the Office are parts. On plaintiff's theory, because the Office receives federal financial assistance, the Court does too. Plaintiff also contends that the Board receives indirect federal financial assistance through the Wisconsin Department of Workforce Development and the Wisconsin Division of Vocational Rehabilitation.

Article VII of the Wisconsin Constitution sets forth the composition and the powers of the judicial branch of the State of Wisconsin. The constitution makes the chief justice of the supreme court "the administrative head of the judicial system," and directs her to "exercise this administrative authority pursuant to procedures adopted by the supreme court." Wis. Const. art. VII, § 4.3. The Office of State Courts is headed by the Director of State Courts, who is "the chief

6

nonjudicial officer of the court system in the state." SCR 70.01(1). The director, who is appointed by the Court and "under the direction of the chief justice," has "authority and responsibility for the overall management of the unified judicial system." *Id.* This authority and responsibility, however, does not extend to the Court and its staff. SCR 70.01(2)(a) ("The director shall have specific responsibility and authority . . . [f]or all state level court personnel, including hiring, separation and salary establishment, except the personal staffs of the supreme court justices and court of appeals judges."); SCR 70.02 ("The director of state courts shall have personnel responsibility and authority, including hiring and separating employees and salary establishment over all state level court personnel except the assistant to the chief justice of the supreme court and the assistant to the chief judge of the court of appeals; law clerks, staff attorneys and secretaries to the justices of the supreme court and judges of the court of appeals."). Nor does the director's authority extend to the Board, which is appointed by the Court, SCR 30.01, and selects its own staff. SCR 70.09. The Court and the Office are funded by separate appropriations from the Wisconsin Legislature. (Lamprech Aff. ¶¶ 6, 10.) The Board funds itself by means of fees and assessments. SCR 30.01(3); (Lamprech Aff. ¶¶ 13-17; Rankin Aff. ¶¶ 4-7.)

Surprisingly, little precedent addresses the issue of what counts as a single "department, agency . . . or . . . instrumentality" under the Rehabilitation Act. The Seventh Circuit has cautioned that § 794 "was not . . . intended to sweep in the whole state or local government" if some of its departments or agencies received federal funds. *Schroeder v. City of Chicago*, 927 F.2d 957, 962 (7th Cir. 1991); *see also Jim C.*, 235 F.3d at 1081 ("The acceptance of funds by one state agency leaves unaffected both other state agencies and the State as a whole."). In other words, a

7

Rehabilitation Act claim against the State is only viable if the department, agency, or instrumentality whose activities are at issue receives federal funds.

Plaintiff argues that the Court, the Board, and the Office are parts of the same department, agency, or instrumentality because the Court controls the Board and the Office. If mere control of one entity by another were enough to render both entities part of the same department, agency, or instrumentality, however, receipt of federal funds by any executive agency would subject the entire executive branch of a state or locality to the Rehabilitation Act. *Schroeder* plainly precludes this result. The court can see no reason why a different rule should apply to the judicial branch than to the executive branch. *Cf. Ass'n of Mexican-American Educators v. California*, 195 F.3d 465 (9th Cir. 1999) (holding that, notwithstanding California constitution's establishment of single "school system," of which individual schools were "part[s]," entire school system was not program or activity under Title VI of Civil Right Act of 1964), *rev'd en banc on other grounds*, 231 F.3d 572 (9th Cir. 2000).[2] The court infers from the fact that Wisconsin funds the Court and the Office through separate appropriations (and does not fund the Board at all), and from the fact that the Court, the Board, and the Office each have independent control over their staff, that the State considers the three to be separate departments, agencies, or instrumentalities. *Cf. id.* at 477 (noting the fact that local school districts had separate staff and separate funding from state school system as relevant to whether districts and system were parts of same program or activity). It follows that the Office's receipt of federal funds does not subject the Court or the Board to the Rehabilitation Act.

---

[2]Title VI of the Civil Right Act of 1964 contains a substantially similar definition of "program or activity." 42 U.S.C. § 2000d-4a.

8

Plaintiff asserts that even if the entire Wisconsin court system is not a unified department, the Board receives federal funding indirectly. *Cf. Bartlett v. New York State Bd. of Law Examiners*, 156 F.3d 321 (2d Cir. 1998) (holding that Rehabilitation Act applied to board of bar examiners that accepted federally-funded vouchers from other state agencies as payment for bar examination fees), *vacated on other grounds*, 527 U.S. 1031 (1999). Plaintiff cites e-mail correspondence between herself and employees of the Wisconsin Department of Workforce Development and the Wisconsin Division of Vocational Rehabilitation as proof that defendants receive federal funds. Nowhere in the e-mail exchanges does any reference to federal funds appear. Defendants, by contrast, present competent evidence that the Board receives no federal funds, either directly or indirectly. (Lamprech Aff. ¶¶ 16-17; Rankin Aff. ¶¶ 6-7.) It is defendants' evidence, and not plaintiff's unsupported assertions, that the court must accept on summary judgment.

Plaintiff also proffers the testimony of Amy R. Starobin, who claims that the Wisconsin Division of Vocational Rehabilitation paid for her law school education and her psychological evaluation using federal funds from its grant under the Rehabilitation Act. (Starobin Aff. ¶ 8.) Even assuming that Starobin's testimony concerning the use of federal funds is based on personal knowledge, Starobin does not testify that the Court or the Board received federal funds. Neither the Court nor the Board provides legal education or psychological evaluations. Because plaintiff has failed to show that the Court or the Board receives federal financial assistance, defendants are entitled to summary judgment on plaintiff's Rehabilitation Act claim.

## II. Motion for reconsideration

Plaintiff has also moved for reconsideration of the court's Order of October 24, which dismissed her due process, equal protection, and ADA claims. Defendants argue that the court

9

should not entertain the motion because it does not meet the threshold for such motions under federal law. Prior to the entry of judgment, however, the court retains the inherent power "to reconsider any portion of its decision and [to] reopen any part of the case." *Marconi Wireless T. Co. of America v. United States*, 320 U.S. 1, 48 (1943); *see also Cameo Convalescent Ctr., Inc. v. Percy*, 800 F.2d 108, 110 (7th Cir.1986) ("In the absence of statute the phrase the 'law of the case' as applied to the effect of the previous orders on the later action of the court rendering them in the same case, merely expressed the practice of courts generally to refuse to reopen what has been decided, not a limit to their power.") (quoting *Messinger v. Anderson*, 225 U.S. 436, 444 (1912)). Insofar as the court concludes that any portion of its Order of October 24 was "clearly erroneous and would work a manifest injustice," *Christianson v. Colt Indus. Operation Corp.*, 486 U.S. 800, 817, (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 n. 8 (1983)), the court will not decline to reconsider it.

Plaintiff devotes most of her brief to arguing the merits of her ADA claim under the statute and applicable regulations. The court dismissed that claim because it concluded that, whatever the statute and regulations said, the Eleventh Amendment precluded the claim. Plaintiff's only challenge to this holding is a string cite to cases from other jurisdictions. Only two of those cases postdate the Supreme Court's seminal holding on the applicability of the Eleventh Amendment to the ADA in *Bd. of Tr. of the Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001). One of those flatly contradicts plaintiff's position. *See Simmang v. Texas Bd. of Law Examiners*, 346 F. Supp.2d 874, 870 (W.D. Tex. 2004) (holding that Eleventh Amendment precluded ADA Title II claim by bar applicant).

In plaintiff's second case, *Garcia v. S.U.N.Y. Health Ctr. of Brooklyn*, 280 F.3d 98 (2d Cir. 2001), the Second Circuit considered whether Title II of the ADA, 42 U.S.C. § 12132, was

congruent and proportional to the proscriptions of the Fourteenth Amendment, such that Congress was entitled to abrogate states' Eleventh Amendment immunity by enacting it pursuant to § 5 of the Fourteenth Amendment. The court concluded that Title II failed the congruence and proportionality test in three ways. First, while the Fourteenth Amendment permits states to decline to accommodate a disability for any rational reason, Title II "allows but a single basis for not providing the accommodation: a showing that a fundamental alteration in the nature of the program, service, or activity would occur." *Id.* at 109. Second, "whereas under the Fourteenth Amendment the absence of an accommodation would be presumptively permissible with the burden of challenging it squarely on the plaintiff, Title II shifts the burden of proof onto the state to defend the absence." *Id.* at 109-110. Third, Title II proscribes "unequal effects," without any requirement that a plaintiff prove that those unequal effects result from discriminatory intent, while the Fourteenth Amendment requires proof of discriminatory intent. *Id.* at 110.

The *Garcia* court nevertheless held that while "Title II in its entirety" violated the Eleventh Amendment, it was constitutional insofar as it permitted suits for money damages, provided that "the plaintiff can establish that the Title II violation was motivated by either discriminatory animus or ill will due to disability."[3] *Id.* at 112. Limiting Title II claims to such cases made it a congruent and proportional remedy because "[g]overnment actions based on discriminatory animus or ill will

---

[3]The implementing regulations for Title II set forth a much more stringent standard:

A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

28 C.F.R. § 35.130(b)(7).

11

towards the disabled are generally the same actions that are proscribed by the Fourteenth Amendment–i.e., conduct that is based on irrational prejudice or wholly lacking a legitimate government interest." *Id.* at 111. Even assuming that the Seventh Circuit would concur with the Second Circuit's reasoning in *Garcia*, the court has already concluded that defendants' conduct had a rational basis and therefore did not violate the Fourteenth Amendment. (Order of October 24, 2005 at 8.) Plaintiff's claim is therefore not within the class of suits permitted by *Garcia.*

Nevertheless, the court concludes that it erred in dismissing plaintiff's ADA claim insofar as that claim sought injunctive relief against the State and the individual defendants in their official capacities. The court based its dismissal on the Supreme Court's holding in *Garrett* and on two district court cases applying *Garrett* to Title II claims. After holding in *Garrett* that the Eleventh Amendment barred suits against states under Title I of the ADA, 42 U.S.C. §§ 12111-12117, however, the Supreme Court noted that its holding

> does not mean that persons with disabilities have no federal recourse against discrimination. Title I of the ADA still prescribes standards applicable to the States. Those standards can be enforced . . . by private individuals in actions for injunctive relief under *Ex parte Young*, 209 U.S. 123, 52 L. Ed. 714, 28 S. Ct. 441 (1908).

*Garrett*, 531 U.S. at 374 n. 9. While plaintiff's claim arises under Title II of the ADA rather than under Title I, courts have not seen that distinction as significant. *See, e.g., United States v. Georgia*, ___U.S. ___, 126 S. Ct. 877, 882, 163 L. Ed. 2d 650, 660 (2006) (Stevens, J., concurring) (citing *Miller v. King*, 384 F.3d 1248, 1264 (11th Cir. 2004)).[4] Accordingly, the court will grant plaintiff's motion for reconsideration of its Order of October 24 insofar as that motion addresses plaintiff's

---

[4]It is worth noting that one of the two district court cases on which the court relied appears not to have involved a claim for injunctive relief. *See Roe v. Johnson*, 334 F. Supp. 2d 415, 418 (S.D.N.Y. 2004).

12

ADA claim for injunctive relief against the State and the individual defendants in their official capacities.

Plaintiff also asks the court to reconsider its dismissal of her due process claim. Plaintiff quotes the Supreme Court's injunction in *Schware v. Bd. of Bar Examiners of the State of New Mexico*, 353 U.S. 232, 238-239 (1957), that "[a] State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment." The reference to "reasons that contravene the Due Process . . . Clause" adumbrates the Court's substantive due process jurisprudence. As the court went on to explain,

> [a] State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar, but any qualification must have a rational connection with the applicant's fitness or capacity to practice law. Obviously an applicant could not be excluded merely because he was a Republican or a Negro or a member of a particular church. Even in applying permissible standards, officers of a State cannot exclude an applicant when there is no basis for their finding that he fails to meet these standards, or when their action is invidiously discriminatory.

*Id.* at 239. Plaintiff's due process claim, as she herself concedes (Br. at 15), is of the procedural variety. Any substantive due process claim that she asserted would have been evaluated under the same "rational basis" standard as her equal protection claim, *see Livadas v. Bradshaw*, 512 U.S. 107, 119-120 (1994), and would have met the same fate–dismissal. As the court held in its Order of October 24, "the heightened scrutiny of which Brewer complains obviously bears a rational relationship to the Board's interest in insuring that only competent persons are admitted to the practice of law in Wisconsin." (Order of October 24 at 8.)

Plaintiff also cites *Willner v. Comm. on Character and Fitness*, 373 U.S. 96 (1963), in which the Court held that an applicant to the bar who is denied admission has a right to confront the

13

witnesses against him or her. Plaintiff's claims in this case do not turn on her confrontation rights. Rather, she claims that the Board deprived her of a property interest in the diploma privilege by unnecessarily extending the time for processing of her application.[5] The court has held that use of the diploma privilege to prove competency to practice law is subject to too many conditions to permit it to be characterized as a property interest. Nothing in plaintiff's motion refutes that conclusion.

## CONCLUSION

Because none of the defendants receive federal funding, directly or indirectly, they are not subject to suit under the Vocational Rehabilitation Act of 1973. Defendants' motion for summary judgment is therefore **GRANTED.** Plaintiff's motion for summary judgment is **DENIED.** Plaintiff's motion for reconsideration is **GRANTED** with respect to her ADA claim for injunctive relief against the State and against the defendants in their official capacities, but is otherwise **DENIED.** The clerk of court shall set this matter on for a scheduling conference.

**SO ORDERED.**

Dated this   22nd   day of March, 2006.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

---

[5]The court notes that while this is nominally a procedural due process claim, it is inextricably intertwined with petitioner's substantive challenges to the Board's actions. The delay of which petitioner claims was caused by the Board's application of what plaintiff contends was an unlawfully heightened standard of review in light of her alleged disability. Since the court has concluded that the Board's heightened standard of review was not unlawful, petitioner's procedural due process claim evaporates.

14