# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

MARSHA BETH BREWER,

        Plaintiff,

    v.                                  Case No. 04-C-0694

WISCONSIN BOARD OF BAR EXAMINERS, *et al.*,

        Defendants.

---

## DECISION AND ORDER

---

This case raises the issue of whether a state board of bar examiners violates the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.*, when it orders an applicant for admission to practice law who has a history of mental illness to undergo a psychological evaluation at her own expense as a precondition to taking action on her application. The case is presently before me on the defendants' motion for summary judgment. For the reasons that follow, the defendants' motion will be denied.

## FACTUAL BACKGROUND[1]

In December of 2002, Plaintiff Marsha Brewer applied to the Board of Bar Examiners for admission to the practice of law in State of Wisconsin. (Aff. of Marsha Brewer ¶ 1.) There are five

---

[1]As is required on motions for summary judgment, the facts are taken in the light most favorable to the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The defendants, who filed proposed findings of fact in accordance with the local rules of the district, argue that because Brewer failed to properly respond to their proposed findings, they must be accepted as true. Civil L.R. 56.2(e). However, defendants also failed to comply with the local rules in that they did not provide Brewer, a *pro se* litigant, with the warnings required by Civil L.R. 56.1. I therefore look to the evidentiary submissions of both parties. In any event, there are few significant differences in the separate versions of the facts submitted by the parties.

qualifications for admission to the practice of law in Wisconsin. The applicant must (1) attain the age of majority; (2) satisfy the legal competence requirements; (3) satisfy the character and fitness requirements; (4) take the prescribed oath or affirmation before a justice of the supreme court or other appropriate judge; and (5) subscribe to the roll of attorneys maintained by the clerk of the supreme court. Supreme Court Rule (SCR) 40.02.

At the time she made her application, Brewer was scheduled to graduate from the University of Wisconsin Law School in May of 2003. (Brewer Aff. ¶ 1.) As a graduate of one of Wisconsin's two law schools, Brewer was entitled under the State's "diploma privilege" to have her legal competence requirement satisfied without having to take the bar examination upon certification that she had satisfactorily completed her studies. SCR 40.03. However, she was still required to establish "good moral character and fitness to practice law." SCR 40.06. The purpose of the "character and fitness" requirement is:

> to limit admission to those applicants found to have the qualities of character and fitness needed to assure to a reasonable degree of certainty the integrity and the competence of services performed for clients and the maintenance of high standards in the administration of justice.

SCR 40.06. Under Supreme Court Rules, the burden of establishing qualifications for admission is on the applicant and "failure of an applicant to furnish available information or to answer questions relating to the applicant's qualifications shall be deemed a sufficient basis for denial of certification for admission." SCR 40.07.

Brewer expected to take the oath and be admitted to the bar with her classmates at one of the large-group swearing-in ceremonies at the Wisconsin Supreme Court in June or August of 2003. (Brewer Aff. ¶ 1.) However, upon review of her application, a member of the Board's staff noted

2

that she had been certified as disabled by the Social Security Administration. (Def. PFOF ¶ 24.) The staff member then referred the application to the Board's investigator for further review and follow-up. (Def. PFOF ¶ 25.) The Board's investigator recommended that Brewer's medical records be reviewed "so that the Board could ascertain the nature of the disability or disabilities underlying the certification and whether Ms. Brewer had any physical or mental conditions that would interfere with her character and fitness to practice law." (Def. PFOF ¶ 26.) He then asked Brewer to provide a copy of her psychological records from her treating physician. Brewer responded that she had no current treating physician and was not taking any medications, although she continued to receive SSDI benefits. (Def. PFOF ¶27.)

According to Brewer, she was determined to be disabled and eligible for SSDI benefits in July of 1986. She states she was evaluated primarily for a psychiatric condition (chronic depression), but also has other chronic medical conditions including fibromyalgia, allergies and chemical sensitivities. (Brewer Aff. ¶ 10, 17, 18.) In order to avoid outright rejection of her application, Brewer reluctantly signed an authorization giving the Board access to her medical and psychiatric records and her Social Security Disability Application. (Brewer Aff. ¶ 3.) However, none of the physicians who had treated her at the time of her disability determination had retained his records.

In December of 2003, the Board directed Brewer to undergo a psychological evaluation by one of two selected providers at her own expense. (Def. PFOF ¶ 30.) Brewer learned that such an evaluation would cost between $1,500 and $2,000, and requested that the Board pay for the evaluation due to financial hardship. (Def. PFOF ¶¶ 31, 35; Brewer Aff. ¶¶ 4, 7.) Alternatively, Brewer requested that the Board waive the psychological evaluation or permit her to provide proof

3

of her mental health in a different manner, such as by offering correspondence from past employers or law school staff. (*Id*.) The Board denied her requests.

Under the Board's rules, its staff is authorized to close any application for a character and fitness certification that remains incomplete for one year following the date it was filed. (Rules of Board of Bar Examiners (BA) 6.06.) When the Board advised her it wanted further information concerning her condition, Brewer requested an extension to complete her application. The Board granted an extension until July 14, 2004. (Def. PFOF ¶ 33.) When she failed to submit the required psychological evaluation by that time, the Board notified her that her file was closed. Although Brewer was told she could reapply for admission, she was advised that she was no longer eligible for admission under the diploma privilege. (Def. PFOF ¶ 36.) Brewer filed this lawsuit in response.

## PROCEDURAL HISTORY

Brewer originally filed suit against the State of Wisconsin, its Board of Bar Examiners and the members thereof, two of the Board's staff, and the justices of the Wisconsin Supreme Court after the Board ordered her to submit to a psychological examination before taking action on her application for admission to the bar. She asserted claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, the Vocational Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution. In its Order of October 24, 2005, the court dismissed plaintiff's constitutional claims as well as her claims under the ADA and her Rehabilitation Act claims against the defendants in their individual capacities. Her Rehabilitation Act claims against the Board and the individual defendants in their official capacities remained, however, since the court could not

4

determine on the record then before it whether the Board received federal funding, a prerequisite for applicability of the Rehabilitation Act.

Defendants then moved for summary judgment on the remaining Rehabilitation Act claims on the ground that the defendants do not receive federal funding for the attorney licensing program and thus the Act does not apply. Plaintiff filed a cross-motion for summary judgment on federal funding, and moved for reconsideration of the dismissal of her due process, equal protection, and ADA claims. In its Order of March 22, 2006, the court granted defendants' motion for summary judgment on plaintiff's remaining Rehabilitation Act claims, but concluded that it had erred in dismissing Brewer's claim for injunctive relief under the ADA and granted her motion for reconsideration of that claim. Defendants then timely filed a motion for summary judgment on the revived ADA claim for injunctive relief. Plaintiff has responded to defendants' motion for summary judgment, as has Disability Rights Wisconsin (DRW), the designated protection and advocacy agency for people with disabilities in the State, *see* Protection and Advocacy for Individuals with Mental Illnesses Act (PAIMI), 42 U.S.C. §§ 10801-10805, which was granted leave to file an *amicus curiae* brief in support of plaintiff's position. It is that motion that is presently before me.

### Clarification regarding the Order of March 22, 2006

Defendants first request the court to clarify the intended effect of its prior order that allowed Brewer to proceed with her "ADA claim for injunctive relief against the State and the individual defendants in their official capacities." *Brewer v. Wisconsin Bd. of Bar Examiners*, No. 06-CV-0694, 2006 WL 752922, at *8 (E.D.Wis. Mar. 22, 2006). Defendants believe that, in light of controlling precedent, the court did not intend through this language to allow Brewer to proceed

5

with an ADA claim directly against the State or its agencies, but rather intended to allow her to proceed only with her claim against the individual defendants in their official capacities.

Defendants are correct. As I noted in that order, the Supreme Court has held that while the Eleventh Amendment bars suits against states under Title I of the ADA,[2] the standards therein can be enforced against the states "by private individuals in actions for injunctive relief under *Ex parte Young*." *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 374 n.9 (2001). *Ex parte Young*, of course, authorized suits for injunctive relief against state officials attempting to enforce an unconstitutional law under color of state law. *Ex parte Young*, 209 U.S. 123 (1908). It did not authorize such suits against the states themselves. The *Garret* Court's limiting language—"under *Ex parte Young*"—therefore authorizes private individuals to bring ADA actions for injunctive relief against individual defendants in their official capacities, but not against the state itself. As for state agencies, a claim against a state agency is tantamount to a claim against the state. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Thus, any ADA claim for injunctive relief made directly against any state agency is similarly barred by Eleventh Amendment immunity. In sum, the court's Order of March 22, 2006, should be read as authorizing Brewer to proceed only with her ADA claim for injunctive relief against the individual defendants in their official capacities, and all claims against the State of Wisconsin are ordered dismissed.

---

[2] In arguing that she is not limited to injunctive relief and that her prior claims for damages should be revived, Brewer and DRW cite *Tennessee v. Lane*, 541 U.S. 509 (2004), *United States v. Georgia*, 126 S. Ct. 877 (2006), and also *Board of Trustees v. Garrett*, 531 U.S. 356 (2001). In *Garrett*, the Court held that states are immune to money-damages suits filed under Title I of the ADA. In *Lane*, the Court held that states are not immune to money-damages suits under Title II of the ADA *to the extent* the suit implicates court access. Finally, *Georgia* held that states are not immune to money-damages suits brought under Title II of the ADA for conduct that *actually* violates the Fourteenth Amendment. I concluded in my March 22 Order that none of these cases helps Brewer. I decline to revisit that ruling here.

6

## ANALYSIS

Title II of the Americans with Disabilities Act prohibits discrimination against disabled persons by public entities. 42 U.S.C. § 12101 *et seq.* It provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The term "public entity" includes "any department, agency, special purpose district or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(B). The Wisconsin Board of Bar Examiners clearly falls within this definition. Brewer claims that the Board violated her rights under this section by subjecting her application for admission to the bar to heightened scrutiny and requiring that she obtain a psychological evaluation at her own expense based solely on the facts that she is considered disabled for Social Security purposes and has been diagnosed with a mental illness.

In support of their motion for summary judgment, the defendants first argue somewhat tentatively that professional licensing schemes, such as Wisconsin's procedure for licensing attorneys, "may not even be covered by Title II of the ADA." (Def.s' Br. In Supp. of Mot. for S.J. at 10.) Assuming it is covered, however, defendants argue they are nevertheless entitled to summary judgment because Brewer is unable to prove her claim. While they do not here dispute her claim that she is disabled within the meaning of the ADA,[3] defendants contend that Brewer cannot show the remaining elements of her claim, namely (1) that she is a "qualified individual with

---

[3]The ADA defines "disability, ... with respect to an individual" as
"(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
(B) a record of such an impairment; or
(C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

Case 2:04-cv-00694-WCG   Filed 11/28/06   Page 7 of 25   Document 153

a disability"; (2) that she was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or otherwise discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination was by reason of her disability. *See, e.g., Weinreich v. Los Angeles County Metro. Transp. Auth.*, 114 F.3d 976, 978-79 (9th Cir. 1997), *cert. denied*, 522 U.S. 971 (1997) (setting forth these elements and affirming summary judgment based solely on plaintiff's inability to prove the final element). Finally, even if there is evidence to support her claim, defendants argue the case should nevertheless be dismissed because Brewer is unable to establish the conditions required for injunctive relief. I will address each argument in turn, beginning with the defendants' argument that Title II of the ADA may not apply.

### 1. Applicability of ADA to Professional Licensing Schemes

Relying principally upon dicta from *Alexander v. Margolis*, 921 F. Supp. 482 (W.D. Mich. 1995), defendants first argue that Title II of the ADA may not apply to Wisconsin's attorney licensing scheme because it is not a service, program, or activity within the meaning of 42 U.S.C. § 12132. In *Alexander*, a former physician sued a State Board of Medicine under various civil rights statutes, including the ADA, for the revocation and refusal to reinstate his license to practice medicine. Addressing the ADA claim, the district court first observed:

> Considering the text of section 12132(2), it is questionable whether the Board's duty to license physicians can be characterized as a "service" being denied to plaintiff or whether the Board's refusal to reinstate his license denies him participation in "programs or activities provided" by a state entity. The Board of Medicine is, if anything, a service, program or activity provided for the public's benefit and safety, not for the benefit of any given individual who does not meet the state's requirements for practicing medicine.

921 F. Supp. at 488. The *Alexander* court found it unnecessary to decide whether the Board's activities were covered by the ADA since it found that the plaintiff was not a "qualified individual

8

with a disability" within the meaning of the ADA. *Id.* Defendants note that most other courts addressing similar ADA claims have likewise found it unnecessary to address the applicability of Title II to professional licensing schemes since those claims, too, were disposed of on other grounds. Nevertheless, defendants argue that the same reasoning applies to this case. Wisconsin's bar admission scheme, like the medical licensing scheme in *Alexander*, is intended to protect the public. *See Matter of Altshuler*, 490 N.W.2d 1, 2 (Wis. 1992) (noting that purpose of bar admission rules is "to protect the public from incompetent lawyers"); *see also Vernon County Bar Ass'n v. McKibbin*, 141 N.W. 283, 284 (Wis. 1913). Defendants conclude: "It may well be, therefore, that the professional licensing scheme which Brewer challenges through her Title II ADA claims are not ones [sic] from [which] she could be 'excluded' since the 'services, programs or activities' were expressly set up for the protection of the public rather than for any applicant or group of applicants." (Def.s' Br. In Supp. of Mot. for S.J. at 13.) (quoting *Alexander*, 921 F. Supp. at 488).

As defendants also acknowledge, however, the argument that Title II of the ADA does not apply to professional licensing schemes has been rejected as unduly narrow and "at odds with the remedial goals underlying the ADA." *Hason v. Medical Bd. of California*, 279 F.3d 1167, 1172 (9th Cir. 2002), *reh. on banc denied*, 294 F.3d 1166 (9th Cir. 2002), *cert. granted in part*, *Medical Bd. of Calif. v. Hason*, 537 U.S. 1028 (2002), *dismissed*, 538 U.S. 958 (2003). The *Hason* court found that medical licensing is a provision of a "service" for purposes of Title II of the ADA. *Id.* Indeed, no court, not even the district court in *Alexander*, has adopted the defendants' position. I decline to do so here.

I find the *Hason* court's analysis persuasive on this issue. The fact that the Wisconsin bar licensing scheme was set up to protect the courts and the public does not rule out the possibility that

9

it also provides a service to would-be attorneys. Furthermore, the language of Title II of the ADA does not require that the benefits be shared by the public at large. Thus, the fact that a relatively small segment of the public—namely, would-be attorneys—seeks the benefits of the Board's services, does not indicate that no public service component is at work here. Finally, Brewer's claim is not just that she was excluded from, or denied access to, the Board's services, but also that she was otherwise discriminated against by the Board. The language of the statute is disjunctive; it prohibits exclusion from participation, denial of benefits, *or* discrimination against by reason of disability. 42 U.S.C. § 12132 (italics added). Thus, even if the licensing of attorneys does not constitute providing a service, Brewer's claim that the Board, a public entity, discriminated against her by reason of disability would still fall within the proscription of Title II. For all of these reasons, I conclude that Title II of the ADA applies and proceed to consider whether Brewer has sufficient evidence to proceed with her claim.

### 2. Qualified individual with a disability

Defendants next contend that Brewer cannot prove she is a "qualified individual with a disability because by her own admission she has received SSDI benefits since 1986." (Pl.'s Resp. Br. at 25.) In order to be eligible to receive SSDI, a person must have a disability so severe that she is "unable to do [her] previous work" and "cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). To prevail on an ADA claim, however, a plaintiff must prove that she is a "qualified individual with a disability." Noting that courts have recognized an apparent contradiction in an SSDI recipient suing for employment discrimination under the ADA, *see Lee v. City of Salem, Ind.*, 259 F.3d 667, 672-73 (7th Cir. 2001), defendants contend that Brewer must at least offer some explanation as to why her

10

receipt of SSDI benefits does not render her unqualified to practice law. (Def.s' Br. In Supp. of Mot. for S.J. on ADA Claims at 8-10.) Because she has failed to do so in response to their motion, defendants contend they are entitled to summary judgment on this issue.

In fact, Brewer did respond to defendants' argument that her receipt of SSDI benefits was inconsistent with her claim to be a "qualified individual with a disability." In her affidavit filed in support of her own motion for summary judgment, Brewer explained that her various impairments require accommodations on her part that she hoped to achieve in the practice of law.[4] (Brewer Aff. ¶ 13.) In addition to avoiding environments that contain chemicals and other substances to which she is sensitive or allergic, Brewer states: "I am chronically depressed and fatigued. I am 57 years old. I need sedentary work, work where I can get sufficient vacation time, sufficient income and benefits." (*Id.* ¶ 18.) She also reports that for twenty years beginning in 1981, she represented employers at unemployment compensation hearings on an "on-call, ad hoc basis." (*Id.* ¶ 13.) These facts are sufficient to reconcile Brewer's receipt of SSDI benefits with her claim that she is qualified to practice law, at least on a part-time basis. After all, there is no requirement that in order to obtain a license to practice law in Wisconsin one must be able to do so on a full-time basis.

But even aside from Brewer's response, as DRW correctly points out, defendants' argument that Brewer cannot prove she is a "qualified individual with a disability" because she receives SSDI benefits confuses employment discrimination claims under Title I of the ADA with Brewer's claim of discrimination by a state licensing agency under Title II. Receipt of SSDI benefits is a problem only in employment discrimination claims under Title I. It does not pose a problem to a claim of

---

[4]Brewer's motion for summary judgment was stricken as untimely. (Docket # 151.) The evidentiary materials filed in support, however, did constitute a timely response to defendants' motion and therefore are properly before me. (Docket # 152.)

11

discrimination in licensing under Title II. This is because the term "qualified individual with a disability" is defined differently under Title I than Title II. Under Title I, the term "qualified individual with a disability" means "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). As the Supreme Court recognized in *Cleveland v. Policy Mgmt. Sys.Corp.*, 526 U.S. 795, 806 (1999), there is at least an apparent contradiction between an SSDI recipient's claim that she is totally disabled and the requirement under the ADA that the plaintiff prove she "can perform the essential functions of the employment position she holds or desires." For this reason, to avoid summary judgment on an employment discrimination ADA claim, an SSDI recipient "cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather, she must proffer a sufficient explanation." *Id.*

No such conflict exists, however, under Title II of the ADA. Under Title II, a "qualified individual with a disability" is defined as

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2). There is no requirement that an ADA plaintiff asserting a claim under Title II be able to perform the essential functions of any job. Under Title II, ADA plaintiffs must simply "meet the eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." There is therefore no contradiction between Brewer's inability to engage in any full-time gainful activity that exists in the national economy and her desire

12

to be admitted to the State Bar of Wisconsin. Since no contradiction exists, no explanation is required. I therefore conclude that Brewer's ongoing receipt of SSDI benefits does not preclude a finding that she is a "qualified individual with a disability" for purposes of Title II of the ADA.

### 3. Discrimination by reason of disability

This brings us to the crux of the case: whether there is evidence that would support a finding that in requiring her to undergo and pay for a psychological evaluation, the Board discriminated against Brewer by reason of her disability. To repeat, Title II of the ADA states: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In addition to this general prohibition, regulations promulgated by the Department of Justice (DOJ) set forth more specific prohibitions against discrimination under the ADA. The DOJ regulations prohibit public agencies from administering a licensing or certification program "in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability," and from establishing requirements for programs or activities of licensees or certified entities "that subject qualified individuals with disabilities to discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(6). The DOJ regulations further provide:

> A public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered.

28 C.F.R. § 35.130(b)(8). Brewer contends that the Board violated these regulations by subjecting her application to heightened scrutiny and placing upon her the burden of undergoing a psychological evaluation at her own expense based solely on the fact that she is disabled.

13

The Seventh Circuit has held that discrimination under Title II of the ADA "may be established by evidence that (1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionately impacts disabled people." *Washington v. Indiana High Sch. Athletic Assoc.*, 181 F.3d 840, 847 (7th Cir. 1999). The Court has also rejected "the suggestion that liability under Title II of the [ADA] must be premised on an intent to discriminate on the basis of disability." *Id.* at 846; *see also Wisconsin Community Services v. City of Milwaukee*, 465 F.3d 737 (7th Cir. 2006) (*en banc*). But neither this circuit, nor any other, seems to have addressed the application of the ADA in the context of professional licensing schemes such as the one at issue here. Several lower courts and a number of commentators have, however.

In fact, since the enactment of the ADA in 1990, the right of bar examining committees to inquire into the mental health of applicants has been the subject of intense controversy. *See, e.g.,* Jon Bauer, *The Character of the Questions and the Fitness of the Process: Mental Health, Bar Admissions and the Americans with Disabilities Act*, 49 UCLA L. Rev. 93 (2001); Carol J. Banta, *The Impact of the Americans with Disabilities Act on State Bar Examiners' Inquiries Into the Psychological History of Bar Applicants*, 94 Mich. L. Rev. 167 (1995). Several courts have held that general inquiries into the mental health history and treatment of applicants for admission constitute discrimination on the basis of disability under the ADA and the above-cited regulations. *Clark v. Virginia Bd. of Bar Examiners*, 880 F. Supp. 430 (E.D. Va. 1995); *Ellen S. v. Florida Bd. of Bar Examiners*, 859 F. Supp. 1489 (S.D. Fla. 1994); *In re Underwood*, 1993 WL 649283 (Me. Dec. 8, 1993). On the other hand, a district court in Texas has upheld a more narrow mental health question inquiring whether an applicant has, within the preceding ten years, been diagnosed or

14

hospitalized for "bi-polar disorder, schizophrenia, paranoia, or any other psychotic disorder." *Applicants v. Texas State Bd. of Law Examiners*, 1994 WL 923404 (W.D. Tex. Nov. 11, 1994). And in *McCready v. Illinois Bd. of Admissions*, 1995 WL 29609, *6 (N.D. Ill. Jan. 24, 1995), the court rejected a challenge under the ADA to the Illinois Board's practice of asking the references of each applicant whether they had knowledge of "any emotional, mental, behavioral or nervous affliction" on the part of the applicant.

In this case, however, Brewer does not challenge the questions she was asked on the application for a license to practice law. To the contrary, she expressly states in her affidavit that "[t]his lawsuit is not about the screening questions that trigger 'heightened evaluation.' It is about the heightened burdens I was subjected to after I was selected for heightened evaluation as to psychiatric fitness." (Brewer Aff. ¶ 22.) The question presented here then is not whether the Board violated the ADA by asking Brewer questions concerning her mental health history; rather, the question presented here is whether, having been told by Brewer that she was receiving Social Security Disability benefits based at least in part on a diagnosis of a mental illness for which she was not currently receiving treatment, the Board could, consistent with the ADA, require her to undergo a psychological evaluation at her own expense before considering her application.

The defendants argue that the Board did not subject Brewer to discrimination on the basis of disability because, in requiring her to provide (and pay for) additional information, it treated her no differently than other applicants from whom additional information was required. They also argue that the requirement that she undergo a psychological evaluation was not imposed on the basis of Brewer's disability because the Board has required psychological examinations of other applicants who have no record of disability. Under Wisconsin's system for attorney licensing,

15

defendants note, each bar applicant bears the burden of proof that he or she meets the qualifications for bar membership set forth in Wisconsin Supreme Court Rule 40.02. SCR 40.07. These qualifications include establishing one's "good moral character and fitness to practice law" to the satisfaction of the Board of Examiners, whose duty it is then to certify to the Wisconsin Supreme Court the character and fitness of qualifying applicants. SCR 40.06. Brewer was required to undergo a psychological evaluation because, as with many other applicants for admission, the Board needed further information before it could certify to the Supreme Court that she met the qualifications. The request was made, defendants argue, not because the Board believed Brewer was disabled, but because her application raised questions concerning her current mental health and, thus, her fitness to practice law.

According to a sworn affidavit from defendant Rankin, who was Director of the Board of Examiners while Brewer's application was pending, the Board's review of applications includes looking for any patterns of conduct that would relate to the applicant's fitness to practice law.[5] (Rankin Aff. ¶ 5.) Applicants whose history shows such conduct—for example, a conviction for DWI; hospitalization for mental health issues; or problems with anger management, domestic battery, or drugs or alcohol—may be required to submit to a psychological evaluation. (*Id.* ¶ 6.)

---

[5]Under the Board's rules, the revelation or discovery of "evidence of mental or emotional impairments" is one of twelve separate categories of "relevant conduct" that are "treated as cause for further inquiry before the Board decides whether the applicant possesses the character and fitness to practice law." BA 6.02. The other categories of relevant conduct that are considered cause for further inquiry include: unlawful conduct; academic misconduct; false statements by the applicant, including concealment or nondisclosure; acts involving dishonesty or misrepresentation; abuse of legal process; neglect of financial responsibilities; neglect of professional obligations; violation of an order of a court; evidence of drug or alcohol dependency; denial of admission to the bar of another jurisdiction on character and fitness grounds; and disciplinary action by a lawyer disciplinary agency or other professional disciplinary agency of any jurisdiction. *Id.*

16

However, requests for psychological evaluations are not limited to people with disabilities, nor are disabled persons singled out in the process of evaluating applicants' fitness to practice law. (*Id.*) In the year Brewer applied, over 75% of all applicants were required to submit some form of additional documentation, most of which was unrelated to any health condition or disability, such as police reports, court documents, criminal history reports, driving records, credit reports, bankruptcy files, tax records, and transcripts from undergraduate and law schools. (Def. PFOF ¶ 41.) Five other applicants, in addition to Brewer, were directed to undergo psychological evaluations. (Def. PFOF ¶ 39.)

The defendants' position, at first blush, seems reasonable. Requesting further information from an applicant with a history of mental illness about the nature and extent of her impairment does not appear to be the same as discriminating against an applicant because of a disability. The purpose of the ADA, at least in part, was to put an end to the restrictions and limitations placed on individuals with disabilities that resulted from "stereotypic assumptions not truly indicative of the individual ability of such individuals to participate in, and contribute to, society." 42 U.S.C. § 12101(a)(7). The fact that the Board requested additional information regarding the nature and extent of Brewer's mental illness demonstrates that it was unwilling to act on "stereotypic assumptions" about her abilities, but wanted to assess her fitness to practice law based upon information specific to her. The Board's attempt to obtain the kind of information needed to make an individualized decision concerning Brewer's ability to practice law, as opposed to relying on outmoded and exaggerated stereotypes, is precisely what the ADA mandates. No one disputes that a mental illness, depending upon its nature and severity, can render a person unfit to practice law. By requiring additional information from applicants who have a history of significant mental illness

17

so that it can make an individualized assessment of their fitness to practice law, defendants contend the Board was simply fulfilling its obligation to the public.

But while the defendants' position may seem reasonable, it is not consistent with the language of the ADA and the regulations promulgated thereunder. The ADA prohibits a public entity from discriminating on the basis of one's disability. "To discriminate means merely to make a distinction on the basis of the prohibited factor." *Stratton v. Handy Button Machine Co.*, 639 F. Supp. 425, 430 (N.D. Ill. 1986). Even if the Board were ultimately to certify that Brewer was fit to practice law, requiring that she undergo a psychological evaluation at her own expense and submit the results to the Board amounts to a burden to which the vast majority of her classmates and other applicants were not subjected. If the reason the Board required Brewer to undergo such an evaluation was because she is disabled, then it discriminated against her by reason of her disability.

The fact that the Board required psychological evaluations based on a variety of factors does not mean that the evaluation required of Brewer was not "on the basis of" her disability. The defendants seem to be arguing that because the Board requires more information from, or places more hurdles before, many applicants based on a wide variety of conduct, and because it requires these applicants to pay any expenses incurred, it is treating Brewer the same as all other applicants in requiring her to pay her own expenses in providing the information it seeks. She must pay for the psychological evaluation just as another applicant might have undergo and pay for an evaluation if he has a history of domestic violence. In other words, because Brewer is treated just like other applicants, the requirement that she undergo an evaluation does not discriminate on the basis of her disability.

18

There are several difficulties with the defendants' argument. The first is that Brewer was treated different from the vast majority of her classmates and the other applicants for admission. Out of the approximately 1,000 applicants for admission to the bar in 2003, only six, including Brewer, were required to undergo a psychological evaluation at their own expense to prove they met the qualifications for admission prescribed in SCR 40.02. (Def. PFOF ¶ 38.) The record does not reflect why the other five applicants were required to do so. While the defendants note that more than 75% of the applicants were required to provide some type of additional information to the Board to prove their character and fitness to practice law (DPFOF ¶ 40), the information required for the vast majority of applicants consisted of records already in existence. In other words, other applicants were required to "furnish available information" pursuant to SCR 40.07. Brewer, on the other hand, was required to pay for an evaluation in order to provide the Board information that was not previously available, presumably at substantially greater expense.

While it is true that other applicants who are not disabled can be required to undergo a psychological evaluation, that fact alone does not prove that the defendants did not discriminate against Brewer on the basis of her disability in requiring that she undergo such an evaluation. Though superficially attractive, the Board's argument is tantamount to saying that the ADA allows discrimination against the disabled so long as one discriminates against other people for other reasons as well. This is not the case. The effect, if not the intent, of legislation such as the ADA is essentially to create a protected class consisting of those to whom it applies–here, the disabled. It is perfectly lawful for the Board to "discriminate" (in the non-pejorative sense) against those who have criminal records, for example, but the fact that the Board does so does not mean that it may *also* use disability as the reason for requiring an evaluation. That is, in fact, exactly what the Act

19

proscribes: it says, in effect, that one cannot make disability a basis for additional burdens, and this is true *even if* one imposes similar burdens on those who have criminal records, were expelled from school, filed for bankruptcy, or any of the other reasons an additional burden might be required. It would be a stronger argument if the Board required psychological evaluations of *every* applicant: in that case, the fact that Brewer may have been disabled would have been mere coincidence and the evaluation would not have been required due to her disability. But when the Board uses a limited set of factors (including potential mental illness) as triggers for requiring the additional examination, a fact-finder could conclude that the examination was required "on the basis of" the applicant's mental disability.

Suppose by way of analogy that a nightclub charged African-American patrons an extra $10 cover charge because they were African-American. The club also used other factors to charge higher prices: it charged male patrons an extra $10 because they were men, and it charged those under 21 an additional $15 because they were young. In this scenario, no one would claim that the club's discrimination against men and those under 21 means that it did not also discriminate against African-Americans on the basis of their race: in defending his actions, the club owner essentially would be arguing that he is not a racist because he is also a sexist and is biased against the young. The existence of several discriminatory criteria, in other words, does not somehow mean that the decision to charge African-American patrons a higher price was not made on the basis of their race.

Returning to the present case, the fact that the Board may also require psychological evaluations of those with records of criminal conduct or alcohol abuse does not mean that its decision to require an evaluation of the plaintiff was not on the basis of a disability. Ultimately, the question is why the Board required *Brewer* to provide an evaluation, and any reasons the Board

20

might require evaluations of other applicants are simply irrelevant to that question. To survive summary judgment Brewer must present some evidence that the Board actually did require the evaluation on the basis of her disability. She has done so. Indeed, under the Board's own version of the facts, Brewer's application was referred for further review and follow-up after a member of its staff noted she had been certified as disabled by the Social Security Administration. (Def. PFOF ¶¶ 24-27.) This constitutes practically an admission that "the defendant[s] intentionally acted on the basis of the disability." *Washington*, 181 F.3d at 847. I therefore conclude that for purposes of the instant motion there is evidence in the record that would allow a fact-finder to conclude the examination was required because Brewer had "a record" of a qualifying impairment. 42 U.S.C. § 12102(2)(B).

A further issue, not sufficiently developed in the record, is whether the Board's actions were necessary in order for it to perform its licensing function. Although the ADA does not itself contain a necessity exception, the DOJ regulations promulgated thereunder do. The regulations prohibit a public entity from using criteria that "screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity *unless* such criteria can be shown to be necessary for the provision of the service, program, or activity being offered." 28 C.F.R. § 35.130(b)(8) (italics added). Similarly, the preamble to the DOJ's regulations provides that neutral criteria that tend to screen out individuals with disabilities are permissible "if the criteria are necessary for the safe operation of the program in question." 28 C.F.R. Pt. 35, App. A at 452 (1994). At least two of the courts that have ruled on the issue of whether mental health inquiries on attorney licensing applications violate the ADA have applied the necessity exception in the course of their analyses. *See Clark v. Virginia Bd. of Bar Examiners*, 880 F. Supp. at 442; *Applicants v. Texas Bd. of Law Examiners*, 1994 WL 776693 at

21

*8. Moreover, in rejecting the argument that such inquiries violated the ADA, the *McCready* court strongly suggested that a necessity exception existed.  The court noted:

> The purpose of the ADA is to protect disabled individuals from discrimination and to promote integration of disabled individuals into the mainstream of society.  It is ludicrous, however, to propose that this purpose can only be accomplished by prohibiting a state from directly investigating and assessing an applicant's emotional and mental fitness to determine if the applicant has sufficient competence to discharge the responsibilities of a lawyer before the state warrants by licensing to the citizens that the individual has the mental and emotional fitness to fulfill a lawyer's legal, ethical, and moral responsibilities.  The Illinois Board of Admissions to the Bar would be derelict in its duty if it did not investigate the mental health of prospective lawyers to the extent allowed by law.

1995 WL 29609 at *7.

If Title II of the ADA does contain such an exception, it may be applicable here.  Given the fact that Brewer was considered totally disabled for Social Security purposes based, at least in part, on a chronic mental illness for which she was not receiving treatment and about which there were no available records, it may be that a psychological evaluation was necessary for the Board to assess her fitness to practice law.  On the other hand, if the Board did not have the option of ordering an applicant to undergo an evaluation, it does not follow that it lacks any basis upon which to make a fitness determination.  Even without a current psychological evaluation, the Board would still be able to look at Brewer's past conduct and behavior to determine her fitness to practice law, just as it does in determining the character and fitness of applicants as to whom there is no evidence of emotional or mental impairment.  As the authors of one article on the subject have noted, "Illness does not effect [sic] a professional's fitness to practice unless his disease causes conduct harmful to clients or patients."  Phyllis Coleman and Ronald Shellow, *Ask About Conduct, Not Mental Illness: A Proposal For Bar Examiners And Medical Boards To Comply With The ADA and Constitution*, 20 Journal of Legislation 147, 154 (1994).  Thus, the authors argue, "professional

licensing boards should inquire about conduct, not treatment for or history of mental illness or substance abuse." *Id.* at 149.

Defendants have not sought summary judgment on the ground that its requirement that Brewer undergo a psychological evaluation was necessary in order for the Board to perform its function, however. As a result, the record is not sufficiently developed either to award or deny summary judgment on that basis. Accordingly, this issue also remains for trial.

### 4. Injunctive Relief

Finally, defendants argue that summary judgment should be granted because injunctive relief, the only relief available to Brewer, would not be appropriate even if the Board did violate the ADA. In support of their argument, defendants note that a plaintiff seeking a permanent injunction in federal court must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 126 S. Ct. 1837, 1839 (2006). Defendants contend that Brewer is unable to establish any of the required elements and for this reason alone her action should be dismissed.

The precise nature of the injunctive relief Brewer seeks is unclear. In her amended complaint, she simply states that injunctive relief is among the remedies she is demanding. (Am. Compl. at 29.) By separate motion, she has sought an injunction directing the defendants to issue her a license to practice law in the State of Wisconsin "without further delay and without the ad hoc arbitrary psychological evaluation and without the written bar examination that would otherwise

23

be required of her without 'Diploma Privilege.'" (Docket # 39.) She also filed a more general "Motion For Injunction To Order Defendants To Stop Operating The Public Service Of Wisconsin Attorney Licensing In A Discriminatory Manner." (Docket # 40.) Notwithstanding this lack of clarity, however, I find defendants' argument is unpersuasive.

If Brewer is able to establish that the Board unlawfully discriminated against her by requiring that as a condition of considering her application to the bar she undergo a psychological evaluation at her own expense, the court could order the defendants to consider her application without such an evaluation, or at least relieve her of the obligation of paying for it. Given the intrusive nature of the evaluation requested by the Board and the fact that the defendants enjoy immunity as to Brewer's claims for monetary damages, it is clear that such relief would protect her from injuries that are otherwise irreparable. The unnecessary (assuming she prevails) invasion of her privacy that the evaluation entails could never be undone, and the money she would otherwise be forced to expend could never be recovered. Two thousand dollars is not a *de minimis* amount, whether one is a practicing lawyer or a Social Security recipient. And as the defendants are immune from monetary damages, it is likewise clear that the second condition would be satisfied since no remedy at law is available.

With respect to the third factor, balancing the hardships of the plaintiff and the defendant, there is no reason to believe that if the Board's requirement that Brewer undergo a psychological evaluation at her expense is found to be both discriminatory and unnecessary, relieving her of that obligation would result in a greater hardship to the defendants than the hardship Brewer would sustain if such relief were not granted. There would likewise be no reason to believe the public interest would be disserved by issuance of such an injunction under such circumstances. While

24

Brewer's request that the certification of her legal competence based on the diploma privilege be restored may raise concerns for the public interest, given the amount of time that has passed since she graduated from law school, the unavailability of that part of the relief she seeks would not warrant dismissal of her entire action. I therefore reject defendants' argument that Brewer could not obtain injunctive relief even if she proves the Board's action was in violation of the ADA.

## CONCLUSION

In sum, the court clarifies its previous order by stating that all claims against the State of Wisconsin are dismissed on ground of sovereign immunity. What remains is plaintiff's ADA claim for injunctive relief against the individual defendants in their official capacities. Because the undisputed facts do not entitle the defendants to judgment as a matter of law on that claim, the motion for summary judgment must be denied. However, since there is no claim for monetary damages, there is no right to a jury trial. *Kramer v. Banc of America Securities, LLC*, 355 F.3d 961, 966 (7th Cir. 2004). Trial will therefore be to the court. The clerk is instructed to set this matter for a Rule 16 (a) conference. *See* Fed. R. Civ. P. 16 (a). Plaintiff and counsel for the defendants and DRW shall appear in person.

**SO ORDERED** this _____28th_____ day of November, 2006.

 s/ William C. Griesbach
William C. Griesbach
United States District Judge

25