UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARSHA BETH BREWER,

    Plaintiff,

v.                                      Case No. 04-C-0694

WISCONSIN BOARD OF BAR EXAMINERS, *et al.*,

    Defendants.

**DECISION AND ORDER GRANTING MOTION TO DISMISS**

Prior court orders have narrowed this case to the following issue: whether the Wisconsin Board of Bar Examiners ("the Board") violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, when it ordered bar applicant Brewer, who has a history of mental illness, to undergo a psychological evaluation at her own expense as a precondition to evaluating her application. Again because of prior court orders, the only relief available on this claim is one for injunctive relief against the individual defendants in their official capacity. Defendants contend the only injunctive relief that is available and that would personally benefit Brewer is her request that defendants not require her to undergo or pay for any psychological evaluation during her bar application process.[1] Having agreed to process Brewer's bar application without this requirement, defendants now move to dismiss the remaining claims as moot. For the reasons that follow, defendants' motion will be granted.

---

[1] The precise nature of the injunctive relief Brewer seeks is unclear, although she clearly seeks that she not be required to undergo or pay for any psychological evaluation during her bar application process. *See* discussion *infra*.

## BACKGROUND

The factual background and procedural history of this drawn-out case have been amply set forth in prior court orders. (*See* Order of November 28, 2006; Dkt. #153.) Therefore, only the new developments will be discussed here. As part of its motion to dismiss plaintiff's remaining claims, the Board indicated that in the event the remaining claims are dismissed for mootness, it will promptly thereafter:

a) Reopen Brewer's application for bar admission through diploma privilege that was closed in 2004 for further processing by the Board.
b) Provide Brewer, promptly after the application is re-opened, an opportunity to complete and submit an updated questionnaire to the Board.
c) Refrain from requiring Brewer, as part of the application process, to undergo any psychological evaluation (such that there would be no cost of any evaluation to allocate).
d) After reopening Brewer's application and receiving any updated questionnaire that she may submit, proceed to gather additional information as the Board deems appropriate in the discharge of its duties regarding her reopened application and process her application in accordance with its standard practices and procedures, with the exception of the term noted above that precludes the Board from requiring her to undergo any psychological evaluation.
e) Expect Brewer to cooperate fully with the Board in its inquiries and efforts to process her application, as is standard practice with any applicant.

(Mot. to Dismiss ¶ 4.) Given that Brewer has also named the justices of the Wisconsin Supreme Court as defendants, and given the Board's wish to preserve that court as a viable and impartial appellate body regarding the Board's actions on Brewer's reopened application, the Board represents that no member of the Wisconsin Supreme Court is involved in the promises made by the Board through the motion. (*Id.* ¶ 6.) In a December 22, 2006, telephone status conference, the Board represented to the court and to Brewer (1) that it could not set a time limit for itself when

2

processing Brewer's application;[2] (2) that the Wisconsin diploma privilege would be available to Brewer for showing the requisite legal competency;[3] and (3) that should Brewer decide to submit a psychological evaluation of her own volition, the Board would consider that as well. (Court audio recording: Telephone Status Conference, December 22, 2006.) Finally, in their reply brief, defendants represent that on January 17, 2007, the Board adopted a motion that reopened Brewer's bar application without any requirement that she undergo a psychological evaluation and directed the Board's Executive Director to inform her of that action and to require her to submit an amendment to her earlier application for purposes of providing updated information. (Reply Br. in Supp. of Mot. to Dismiss at 1.)

## ANALYSIS

**Mootness Doctrine and Exceptions**

Article III of the Constitution limits a federal court's jurisdiction to "cases" and "controversies." U.S. Const. art. III, § 2, cl.1. When circumstances change during litigation such

---

[2] The Board stated that it is not in a position to establish a time limit, as it cannot presently know whether future issues surrounding Brewer's application would warrant further investigation and thereby protract its evaluation. For a similar reason, the Board stated that an artificial time limit could actually work to Brewer's disadvantage. (Court audio recording: Telephone Status Conference, December 22, 2006.)

[3] The Board points out that the "fitness" prong of the character and fitness evaluation is only partly addressed through an applicant's graduation from a Wisconsin law school (i.e., the diploma privilege) or passage of the Wisconsin bar examination. "An applicant could, for example, fully satisfy one of those two threshold criteria but then display, during the application process or through other activities that come to the Board's attention, a complete inability to understand fundamental legal concepts or to heed court rules in ways that are expected of any prospective Wisconsin lawyer. That would raise 'fitness' rather than 'character' concerns." (Reply Br. in Supp. of Mot. to Dismiss at 4 n.1.)

3

that a case or controversy no longer exists—that is, when the issues are no longer "live" or when the parties no longer have a legally cognizable interest in the outcome—the case is moot. *Powell v. McCormack*, 395 U.S. 486, 496 (1969). Mootness is often described as "the doctrine of standing set in a time frame. The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (quoting Henry Monaghan, *Constitutional Adjudication: The Who and When*, 82 Yale L.J. 1363, 1384 (1973)). The party asserting mootness bears the burden of persuasion, which is described as a "heavy" burden. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).

A party that cannot meet the requirements of the general mootness inquiry might nevertheless be able to invoke one of four recognized exceptions to the mootness doctrine so as to gain judicial review. *Chong v. District Director, INS*, 264 F.3d 378, 384 (3d Cir. 2001). A court will not dismiss a case as moot if: (1) secondary or "collateral" injuries survive after resolution of the primary injury, *see Sibron v. New York*, 392 U.S. 40, 53-54 (1968); (2) the issue is deemed a wrong capable of repetition yet evading review, *see Roe v. Wade*, 410 U.S. 113, 125 (1973); (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time, *see United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953); or (4) wrongs to a class continue though those to the named plaintiffs do not, *see Sosna v. Iowa*, 419 U.S. 393, 401-02 (1975). I take up these exceptions in turn.

### 1. Adverse Collateral Consequences

A case is not mooted if adverse, collateral consequences survive after resolution of the primary injury. *Sibron*, 392 U.S. at 53 (1968); *see also O'Shea v. Littleton*, 414 U.S. 488, 495-96

(1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy . . . if unaccompanied by any continuing, present adverse effects."). This exception seems to be invoked most often in criminal cases, which is understandable, given the adverse collateral consequences attendant upon a criminal conviction. *See, e.g., Sibron*, 392 U.S. at 57 (1968) (collateral consequences from a criminal conviction are presumed). However, the exception is certainly not limited to the criminal context. *E.g., Kirland v. Nat'l Mortgage Network, Inc.*, 884 F.2d 1367, 1370 (11th Cir. 1989) (dismissal of action did not moot attorney's challenge to a court's revocation of his admission *pro hac vice* for failure to abide by promises made during settlement negotiations, as disqualification on grounds of dishonesty and bad faith could well hang over plaintiff's name and career for years to come); *Miller v. Washington State Bar Ass'n*, 679 F.2d 1313, 1316-18 (9th Cir. 1982) (attorney could sue state bar association to expunge a letter of admonition from his file since he would be required to explain the admonition if he applied to the bar in other states or for judicial appointment).

Here, Brewer asserts that notwithstanding the Board's offer, she faces the possible collateral consequence that her license will be denied for a pretextual and impermissible reason. And if her license is denied, she asserts she will suffer stigmatization and diminished employment prospects. However, the alleged primary injury is that requiring Brewer to undergo and pay for a psychological evaluation as part of her bar application violates the ADA. The alleged primary injury is *not* denial of a bar license, for the Board has yet to even make a decision in that regard. I conclude that, on the evidence presented, the possibility that the Board will deny Brewer a bar license on pretextual and impermissible grounds is too speculative to qualify as an adverse, collateral legal consequence. If the Board denies Brewer's application, and Brewer believes the denial is wrongful, she may take

5

action at that time (e.g., appeal the Board's decision to the Wisconsin Supreme Court). Stigmatization and diminished employment prospects are even more speculative consequences, for they come into play (for purposes of this mootness exception analysis) only in the event that Brewer's bar license is denied. *See, e.g., Sandidge v. State of Washington*, 813 F.2d 1025, 1025-26 (9th Cir. 1987) (rejecting plaintiff's claim that case was not moot because his substandard job evaluation might adversely affect future search for certain types of jobs where plaintiff could not specify he had applied to even one such job); *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1268-69 (10th Cir. 1989) (allegations that defendants placed "defamatory cloud" over plaintiff attorney's "employment opportunities," without evidence of present harm to plaintiff's established business relationships or existing legal rights as an attorney, were deemed mere "speculative future harm" too intangible to implicate liberty or property interest ); *cf. Corbitt v. Andersen*, 778 F.2d 1471, 1475 (10th Cir. 1985) (prima facie violation of a liberty interest under 42 U.S.C. § 1983 was established where plaintiff alleged and presented evidence of present harm to his established business relationships). Furthermore, assuming the Board does not publish its reasons for denying an application, it is difficult to see how its conduct stigmatizes an applicant.

### 2. Injury Capable of Repetition Yet Evading Review

A case is not moot where the alleged injury is capable of repetition yet likely to evade review. *Roe v. Wade*, 410 U.S. at 125 (1973); *Rosario v. Rockefeller*, 410 U.S. 752, 756 n.5 (1973) (case was not moot where date of primary had passed and plaintiffs were eligible to participate in the next primary election). This exception, which applies only in "exceptional situations," *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983), saves a non-class action suit from being moot when "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or

6

expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (citation and quotation omitted); *see also Brown v. Bartholomew Consol. School Corp.*, 442 F.3d 588, 598-99 (7th Cir. 2006) (setting forth same formulation). The mere "theoretical possibility" of a repeat violation is insufficient for purposes of meeting the second prong. *Walsh v. United States Dep't of Veterans Affairs*, 400 F.3d 535, 537 (7th Cir. 2005).

This exception to the mootness doctrine does not apply to the facts of this case, for there is no reasonable expectation that Brewer will be required to undergo and pay for a psychological evaluation as part of her current application. Nor is there a reasonable expectation that such will be required of her should she re-apply. This case has no doubt clarified for the Board the demands placed on it by the ADA when processing the application of someone in Brewer's rare set of circumstances (i.e., the bar applicant reports current receipt of Social Security disability benefits; when asked for details, the applicant provides no elaboration or documentation beyond stating the disabilities were mental in nature; and applicant's health care providers, when asked for records, state that all records regarding applicant have been destroyed). In the event the Board denies Brewer's application and she re-applies, it is unreasonable to expect that the Board would require her to undergo and pay for a psychological evaluation. In fact, it is most reasonable to expect just the *opposite*—namely, that the Board, in order to save itself considerable outlays of time and money in a likely court action, would not require Brewer to undergo and pay for a psychological evaluation.

Brewer alleges that the case is not moot on the ground that mentally disabled future applicants will suffer a similar injury. Even if that alleged ground is true, it does not help her for purposes of warding off mootness under this exception, for in the absence of a class action suit, the exception is explicitly limited to "the same complaining party." *Murphy*, 455 U.S. at 482 (1982).

7

### 3. Voluntary Cessation

Voluntary cessation of allegedly wrongful conduct does not necessarily deprive a federal court of its power to determine the legality of the challenged conduct, for dismissal of the suit in such circumstances would leave the defendant free to return to his old ways. *Friends of the Earth*, 528 U.S. at 189 (2000). However, if a defendant voluntarily ceases the allegedly wrongful conduct, the case can be rendered moot "if subsequent events [make] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (quoting *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968)). When governmental officials voluntarily express an intent to cease allegedly wrongful conduct regarding the plaintiff, a rebuttable presumption exists that the expressed intent is genuine. *Troiano v. Supervisor of Elections in Palm Beach County*, 382 F.3d 1276, 1283 (11th Cir. 2004); *Fed'n of Adver. Indus. Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 929-30 (7th Cir. 2003); *Chicago United Indus., Ltd. v. City of Chicago*, 445 F.3d 940, 947 (7th Cir. 2006) (stating that "the respect or *politesse* that one government owes another, and thus that the federal government owes state and local governments . . . requires us to give some credence to the solemn undertakings of local officials," and noting separate case where "the presumption was rebutted"); *Magnusson v. City of Hickory Hills*, 933 F.2d 562, 565 (7th Cir. 1991) ("When the defendants are public officials . . . we place greater stock in their acts of self-correction, so long as they appear genuine."). If the plaintiff's only claims seek to require governmental officials to cease allegedly wrongful conduct, and those officials offer to cease that conduct, then the claims should be dismissed as moot, absent some evidence that the offer is disingenuous. *Fed'n of Adver. Indus. Representatives*, 326 F.3d at 930; *Chicago United Indus.*, 445 F.3d at 947. Only in cases where there is evidence creating a reasonable expectation that the governmental officials' expressed intent is not genuine has the

8

Supreme Court refused to hold the case moot. *E.g., City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 & n.11 (1982) (presumption rebutted by city's stated intention to reenact the enjoined ordinance); *Northeastern Fla. Chapter of the Assoc'd Gen. Contractors of Amer. v. City of Jacksonville*, 508 U.S. 656, 662 (1993) (case not moot where city had already enacted ordinance substantially similar to the challenged, repealed ordinance).

The Board has promised in writing and on the record in open court that it will reopen Brewer's bar application without requiring her to undergo or pay for a psychological evaluation. Furthermore, the Board adopted a motion to do so, indicating that its intent is already being implemented. Brewer has introduced no evidence to rebut the presumption that the Board's offer is genuine. According to Brewer, the timing of the defendants' offer suggests it is a disingenuous legal maneuver aimed at rendering the case moot. (Resp. Br. at 7.) It is no secret that defendants are interested in ending this litigation, but neither the timing of defendants' offer nor the fact that it might work a benefit in their favor (i.e., result in dismissal of this case) suggests the offer itself is disingenuous.

Brewer's real fears appear to be directed not to the sincerity of the Board's offer, but rather to the possibility that in evaluating her reopened application the Board will "take cover," so to speak, in the subjective nature of the character-and-fitness evaluation and/or retaliate against her for the present suit. However, speculation as to the Board's present motives or its future conduct regarding Brewer's application is no substitute for evidence that its offer is disingenuous. Many bar examination procedures are subjective by their very nature, and that fact, standing alone, does not make the procedures illegal. *E.g., Tofano v. Supreme Court of Nevada*, 718 F.2d 313, 315 (9th Cir. 1983) ("[S]tates may constitutionally use essay-type questions on bar examinations even though grading is necessarily subjective because performance on essay-type questions bears a rational

9

connection with the ability to practice law."). It may be true that if Brewer receives an adverse determination on her reopened application, she will be precluded from re-instituting her suit in this court, even if she claims the Board's decision is retaliatory. *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983) (holding that lower federal courts lack jurisdiction to review D.C. court's decision denying plaintiff's application to bar); *see also Edwards v. Illinois Bd. of Admissions*, 261 F.3d 723 (7th Cir. 2001) (holding that *Rooker-Feldman* bar on review of state court decisions on bar admissions extends to admission board's requirement of full disclosure of mental health records upon which board's adverse determination was at least partially based). But even if Brewer is not free to sue in this court, this does not leave her without any remedy at all. She would still be able to challenge the Board's determination in the Wisconsin Supreme Court, SCR 40.08(5), and, if unsuccessful there, seek certiorari review in the United States Supreme Court. In any event, her claim would be separate and distinct from the one now before this court. The mere possibility of a future claim does not prevent a determination that the present claim is moot.

**4. Class Action**

Earlier in this case, Brewer moved unsuccessfully to join plaintiffs,[4] and she continues to assert the interests of other mentally disabled bar applicants who have been, or might be, subjected

---

[4] Brewer moved to join as plaintiffs two Wisconsin attorneys who, according to Brewer, were subjected to searches of their psychological records and required to undergo psychological evaluations when applying for the Wisconsin bar. (Mot. for Joinder of Pls.; Dkt. #102.) It appeared that she was seeking to join them involuntarily. (Pl.'s Reply Br.; Dkt. #124 at 3.) Brewer also sought to join an unspecified number of persons "who have an interest in non-discrimination in public services or in disability rights." (Mot. for Joinder of Pls. at 3; Dkt. #102.) I denied Brewer's motion to join plaintiffs, noting the delay and prejudice of joining parties in the circumstances—over two years after the action commenced, with dispositive motions already submitted, and with no exigent circumstances—and concluding that Brewer had failed to show the proposed plaintiffs are indispensable parties. (*See* Order of October 30, 2006, at 4-5.)

10

to the Board's allegedly discriminatory policies, regulations, and practices.[5] I find it unnecessary to discuss the contours of the class action exception to mootness, however, for the simple fact that Brewer never sought class certification. Even if she had sought class certification, Brewer, as a *pro se* litigant, cannot litigate on behalf of a class. *See* Fed. R. Civ. P. 23.

### 5. Public Interest

A few lower court decisions seem to establish a "public interest" exception to the mootness doctrine, although these decisions also seem to (improperly) ignore the requirement that the individual plaintiff may be affected in the future. 13A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3533.9 n.5 (2d ed. 1984) (collecting cases). Notably, however, the Supreme Court has explicitly refused to adopt a public interest exception, and the individual impact requirement—while it may be diluted in certain circumstances—must still be met. *Id.* § 3533.9 at 394-95. Furthermore, the few lower court decisions that seem to establish a "public interest" exception are all 25 or more years old, and are perhaps best explained on the ground that "they began at time when class actions provided no clear opportunity to mollify ordinary mootness doctrine." *Id.* at 401. In other words, the "public interest" exception to the mootness doctrine, to the extent it ever existed, dissipated with the rise of the class action suit, and I see no grounds for its resuscitation here. *See* Anne Bloom, *From Justice to Global Peace: A (Brief) Genealogy of the Class Action*, 39 Loy. L.A. L. Rev. 719, 724-27 (2006) (discussing rise of the class action suit generally).

---

[5] Brewer does not object to the mental health inquiry in the application itself, but rather to the heightened burdens imposed on a mentally disabled applicant. Brewer states in her affidavit that "[t]his lawsuit is not about the screening questions that trigger 'heightened evaluation.' It is about the heightened burdens I was subject to after I was selected for heightened evaluation as to psychiatric fitness." (Brewer Aff. ¶ 22.)

11

As noted in this court's prior order, the right of bar examining committees to inquire into the mental health of applicants has been the subject of intense controversy since the enactment of the ADA in 1990, and several courts have held that general inquiries into the mental health history and treatment of applicants constitute discrimination on the basis of disability under the ADA and its implementing regulations. (*See* Order of October 30, 2006, at 14-15.) While there will likely be future Wisconsin bar applicants who are mentally disabled, the controversy at issue here is highly unlikely to recur—namely, whether the Board may require an applicant to undergo and pay for a psychological evaluation where: (1) the applicant reports current receipt of Social Security benefits for an unstated disability; (2) when asked for details, the applicant provides no elaboration or documentation beyond stating the disabilities were mental in nature; and (3) the applicant's health care providers, when asked for records, state that all records regarding applicant have been destroyed. Furthermore, Brewer is *not* contesting the Board's general inquiries into the mental health of applicants for admission to the bar. (*See* Brewer Aff. ¶ 22; Dkt. #101 ( "This lawsuit is not about the screening questions that trigger 'heightened evaluation.' It is about the heightened burdens I was subjected to after I was selected for heightened evaluation as to psychiatric fitness.") As Brewer has disclaimed that issue, she may not revive it now—long after the time for amendments has expired—for purposes of keeping her case alive.

Because of the unique facts of this case, and because Brewer is not contesting the Board's practice of making general inquiry into an applicant's mental health history and treatment, invocation of any "public interest" exception to the mootness doctrine—assuming such an exception exists—would not be warranted.

12

**Available Relief**

Again, Brewer's sole remaining claim is her ADA claim for injunctive relief against the remaining defendants (the Board, current Board member Ben L. Hopkins, former Board member Gene R. Rankin, and the current Justices of the Wisconsin Supreme Court) in their official capacities.[6] The next questions to address, therefore, are whether the Board's offer gives Brewer all of the injunctive relief to which she is entitled, and whether, in the court's discretion, any additional relief, such as a declaratory judgment, is warranted. It is important to frame this discussion by recalling that equitable relief is left to the court's discretion. Even if Brewer's remaining claims were *not* constitutionally moot, the court could, for prudential reasons, withhold injunctive and declaratory relief. *S-1 v. Spangler*, 832 F.2d 294, 297 (4th Cir. 1987); *see also United States v. W.T. Grant*, 345 U.S. 629 (1953); *A.L. Mechling Barge Lines, Inc. v. United States*, 368 U.S. 324 (1961).

**1. Injunctive Relief**

The precise nature of the injunctive relief Brewer seeks is unclear. In her amended complaint, she simply states that injunctive relief is among the remedies she is demanding. (Am. Compl. at 29.) By separate motion, she sought an injunction directing the defendants to issue her a license to practice law in the State of Wisconsin "without further delay and without the ad hoc arbitrary psychological evaluation and without the written bar examination that would otherwise

---

[6] All of Brewer's claims for damages have been dismissed in prior court orders. Brewer, of course, may appeal those decisions. However, she has offered the court no persuasive reason for resurrecting any damages claim stemming from the alleged ADA violation. Nor do I see any grounds for doing so. As for other forms of relief explicitly requested, on August 21, 2006, Brewer moved for a declaratory judgment that defendants were violating the ADA and the Rehabilitation Act (Dkt. #97), but that motion was stricken as untimely. (*See* Order of October 30, 2006, at 3-4; Dkt 151.)

13

be required of her without 'Diploma Privilege.'" (Docket # 39.) She also filed a more general "Motion For Injunction To Order Defendants To Stop Operating The Public Service Of Wisconsin Attorney Licensing In A Discriminatory Manner." (Docket # 40.) The court initially viewed these two motions as requests for permanent relief, but Brewer advised the court in a Rule 16 telephone scheduling conference that they were intended to obtain interim relief, and requested the court to proceed on them forthwith. The court denied the motions after finding that Brewer had failed to set forth facts sufficient to support a finding as to any of the prerequisites for preliminary injunctive relief.[7] (Order of November 18, 2005, at 2; Dkt. #55.)

The Board's offer grants Brewer the injunctive relief to which she is entitled, and I conclude that no other injunctive relief is viable here. It would be inappropriate and premature for this court to order defendants to issue Brewer a bar license, given that the State of Wisconsin has reposed that discretion in the Board, and given that the Board has not yet even made a decision on her application. Brewer's vague request that the court order the Board to stop operating in a discriminatory manner—even if that request were still alive—would not merit court action, especially as Brewer does not contest the Board's general inquiries into an applicant's mental health.[8] Finally, I note that any injunctive order would be binding upon the Board only as to its actions toward Brewer, and not toward future applicants. *See* Fed.R.Civ.P. 65(d) ("Every order granting an injunction . . . is binding only upon the parties to the action . . . ").

---

[7] To obtain a preliminary injunction, a plaintiff must demonstrate that it will prevail on the merits of the lawsuit, that there is no adequate remedy at law, and that it will suffer irreparable harm without injunctive relief. Once these requirements are met, the court must then balance the degree of irreparable harm to the plaintiff against the harm that the defendant will suffer if the injunction is granted. *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005).

[8] While admitting that the Board's inquiry into mental health is not at issue, Brewer alleges that the inquiry lacks an objective standard of mental health, and that the Board should be permitted to inquire only into an applicant's conduct rather than into his mental health history and treatment.

### 2. Declaratory Relief

A court may address a claim for declaratory relief only where "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975) (internal quotation and citation omitted). I find that no qualifying controversy remains in this case. Even if the court were to issue a declaratory judgment that the Board's admissions policies, regulations, and practices violate the ADA, such a judgment would have no practical effect, given that Brewer's damages claims have been dismissed.

### CONCLUSION

The Board's expressed intention to reopen Brewer's bar application on the terms and conditions stated above is presumed to be in good faith, and Brewer has not rebutted that presumption. In light of the fact that no damages claims remain, I conclude the Board's offer gives Brewer the only equitable relief to which she is entitled. The sole remaining controversy in this case has been mooted, and none of the recognized exceptions to the mootness doctrine applies.

**IT IS THEREFORE ORDERED** that defendants' motion to dismiss plaintiff's remaining claims for mootness is **GRANTED**. Plaintiff's motion for reconsideration of discovery and a protective order (Dkt. #159) is **DENIED** as moot.

Dated this   14th   day of February, 2007.

       s/ William C. Griesbach
      William C. Griesbach
      United States District Judge